Lowenstein *v.* The People.

Decree affirmed.

[NEW YORK GENERAL TERM, June 7, 1869. *Geo. G. Barnard, Cardozo* and *Sutherland,* Justices.]

———•—•———

HENRY M. LOWENSTEIN, plaintiff in error, *vs.* THE PEOPLE, defendants in error.

The principle of the rule laid down in *The People* v. *Erwin,* (4 *Denio,* 129,) viz., that the owner of a house who rents it to be used and kept as a house of prostitution is to be deemed to keep such house, and is liable to indictment and conviction as the keeper of a bawdy house, applies to any person who is personally concerned in the keeping of such a house.

In misdemeanors there are no accessories; all who procure, counsel, aid or abet the commission of the crime are principals.

One who has the control of premises, and knowingly rents a building thereon for, and permits it to be used as, a house of prostitution, cannot screen himself from punishment by showing that he did not own the premises, but rented the same and collected the rents merely as agent for the owner.

THIS is a writ of error to the court of sessions of the county of Monroe. The defendant was tried, convicted, and sentenced by said court upon an indictment containing four counts. The first being for keeping a disorderly house; the second for keeping a gaming house; the third for keeping a bawdy house; the fourth for renting a house with the intent that the same should be kept for the purposes of prostitution.

Evidence was given by the people tending to show that

the defendant was occasionally in the block, and that he received the rents for some of the rooms, and that the inmates of different rooms in the house were prostitutes. It was shown on the part of the defendant that he did not own the house, but the same belonged to his wife, in whom the title was, and that all he did was as her agent, in collecting the rents for her.

The prosecution having closed their evidence, the defendant's counsel made a motion to quash the last count in the indictment, which motion the court granted, and ordered the said count to be quashed, which was done. The defendant's counsel also moved that the prisoner be discharged on the ground that there was no sufficient evidence or proof to prove the charges laid in the indictment against him, and because there was not sufficient evidence to put the prisoner on his defense, or to go to the jury. But the court overruled the motion, and decided that there was sufficient evidence to put the defendant upon his defense, and to leave the case to the jury; and the counsel for the defendant excepted.

At the close of the case, the defendant's counsel again moved the court that the prisoner be discharged for the same reasons urged on the former motion, and also renewed such motion, and moved for the prisoner's discharge on the further ground that it now appeared affirmatively on the part of the defendant, that he was not the owner of the block or premises in question, designated in the indictment, or in any way interested therein; and that at the most he was a mere agent in the renting, and collecting of the rents, of the tenants who occupied the block in question, another person being at the same time the absolute and separate owner thereof; that there was not sufficient evidence to prove the charges laid in the indictment against the prisoner; and that there was not sufficient evidence to convict the defendant of the crime charged in the indictment; or that the court should direct the jury

that there was not sufficient proof to justify a conviction, but that the indictment should be quashed on the ground of a total failure of proof. But the court overruled the motion, and decided that there was sufficient evidence to convict the defendant, if the same were believed to be true, and that the case should and must go to the jury; to which ruling and decision the defendant, by his counsel, excepted. The court then charged and directed the jury, among other things, that the defendant was liable to be indicted for keeping a bawdy or disorderly house, if he acted as agent only in renting the same, although he were not in fact the owner thereof, or in any way interested therein, and to be convicted merely as agent of the owner; to which charge and direction the defendant's counsel also excepted.

And thereupon the jury found the defendant guilty of keeping a disorderly house, as charged in the indictment.

*M. S. Newton,* for the plaintiff in error. I. The last count in the indictment was properly quashed, because it was the same in form as the indictment in the case of *The People* v. *Brockway,* (2 *Hill,* 558,) which was held to be bad, in that case, and also in the case of *The People* v. *Erwin,* (4 *Denio,* 129.)

II. The evidence did not show that the defendant rented any part of the block to any person, knowing such person to be one of lewd character; or that he rented any part of the block with the intent or knowing that it would be kept as a place of prostitution. This was a large block of buildings, consisting of many rooms, and it does not appear from the testimony that the defendant ever rented more than one set of rooms, and those to the man Samuel Ellison, and there was therefore no evidence to convict him of renting a house to be kept for the purpose of prostitution.

III. He was not the keeper of a house of ill fame, for

he neither owned nor controlled, nor had the power to control, the house, so far as any thing appears from the evidence in the case.

IV. If the case of *The People* v. *Brockway* (2 *Hill*, 558) is good law, the conviction and charge of the court is wrong; and the charge of the court is wrong as applied to this case, even within the decision of *The People* v. *Erwin*, (4 *Denio*, 129.) For in the 2d of *Hill*, the defendant was held not liable who rented *his own* house for the purpose of being kept as a house of prostitution. And the case of *Irwin* only held that where the *owner* rents and permits his own house to be kept as a place of prostitution, the owner is liable, as principal, for aiding and abetting in a misdemeanor. The case of *Harrington* (3 *Pick.* 26) is to the same effect.

V. The defendant was neither owner nor had the power to control the block in question, and he could not be for this reason an abettor of the crime, as was held in the case of *Irwin*, who furnished the house.

VI. The court charged that the defendant was liable if he acted merely as an agent of the owner of the house. This cannot be so. 1st. For the renting of a house, like the selling of furniture, or the drawing of a lease, is an act innocent in itself. 2d. To make the act complained of criminal, it must be such as directly and immediately, if not necessarily, leads to the commission of the crime. (*See the words of Justice Nelson in The People* v. *Brockway*, 2 *Hill*, 561.) 3d. The owner of a house, who rented it to another to be kept as a house of ill fame, might be said to aid in the commission of the crime, because he furnished the house for the purpose; and he could suffer it to be carried on or he could stop it at any moment. But a mere agent, in collecting rent, or in renting one room, cannot be said to aid in the commission of the crime, within the principles of law as laid down in the case of *The People* v. *Brockway*, and other cases referred to. 4th. The mere

agent in this case is one step further removed from the crime, and does not come within the definition of aiders and abettors. (*See opinion of Nelson in Brockway's case.*) 5th. If any one having any thing to do with the block or rooms were liable, a carpenter who worked repairing or fitting up the rooms, or a carman who carted the furniture to the rooms, or the scrivener who wrote the leases, would be liable, on the same principle, as aiders and abettors of the crime.

*J. A. Stull*, (dist. att'y,) for the people.    I. This was the case of an indictment for a misdemeanor, (keeping a bawdy house.)    In misdemeanors there are no accessories, but all parties having a criminal participation in the commission of the act are to be charged as principals. (*Barb. Crim. Law, p.* 286, 2*d. ed.*)    An accessory before the fact, in a felony, is one who, not being present at the commission of the act, does yet procure, counsel, aid and abet the perpetrator in the commission of it. (1 *Hale*, 615. *Whart. Cr. Law*, § 34.)    Therefore, if the defendant in any way aided, abetted, procured or counseled the keeping the bawdy house, or disorderly house, then he was guilty of the principal offense, as charged in the indictment. It would seem to be a plain proposition, and it is now settled by authority in this State, that the act of renting a house for the purpose, or with knowledge and intent of its being kept as a house of prostitution, is such an aiding and abetting and procuring the keeping the house in that manner, as renders the person who demises the house guilty of the principal offense of keeping. (*People* v. *Erwin*, 4 *Denio*, 129, *overruling People* v. *Brockway*, 2 *Hill*, 558.)    So the letting of a house to a prostitute, knowing her to be such, with intent that it shall be kept for purposes of prostitution, is declared to be indictable at common law, in *Com.* v. *Harrington*, (3 *Pick.* 26.)    So also it is said in *Ross* v. *Com.*, (2 *Monroe*, 417,) that "as the keeping of a bawdy

house is a public offense, every person who voluntarily aids in establishing such a pestilent nuisance should be deemed guilty of a misdemeanor, and is liable to indictment."

II. The defendant having control of the house, so far as its possession for the time being was concerned, and having, as the jury found, put the several prostitutes who infested it into possession of it, with intent that they should use it for purposes of prostitution, and thereby aided in furnishing them with the means of pursuing their vicious course of life, is guilty of the offense charged; and the fact that the fee of the premises was in his wife and not in him, cannot, on principle or common sense, make any difference. Therefore, the doctrine of the charge was correct. It may be observed that the third count in the indictment, which charges the keeping of a bawdy house, following Chitty's precedent, (2 *Chit. Crim. L.* 39,) charges the keeping of "a certain common bawdy house," not *his* house, and "for filthy lucre and gain," not *his* lucre and gain. And Chitty says: "The charge does not respect the ownership, but the criminal management of the house." (2 *Chit. Crim. L.* 39, note *f.*)

*By the Court,* E. DARWIN SMITH, J. The case of *The People* v. *Erwin* (4 *Denio,* 129) decides that the owner of a house who rents it to be used and kept as a house of prostitution is to be deemed to keep such house, and is liable to indictment and conviction as the keeper of a bawdy house. The principle of this rule applies to any person who is personally concerned in the keeping of such a house. In misdemeanors there are no accessories. All who procure, counsel, aid or abet the commission of the crime are principals.

In this case the defendant confessedly had the control of the premises in question, and knowingly rented the building for, and permitted it to be used as, a house of prostitution. It matters not in what capacity he exercised

such control over the house. There are no agencies in crime. The defendant's wife, who was the owner of the premises in fact, entrusted to him the power to rent them as he thought proper. She probably knew nothing of the character of the tenants he put into possession of the premises. He exercised all the power of an owner, and he must take the responsibility, and be liable to the same extent as if he were in fact the owner. He cannot screen himself from responsibility for the setting up of a disorderly house by saying that he merely acted as the agent of the owner. He did in fact personally commit the crime. He let the house to be used as a place for prostitution. It would be a reproach upon the law if it allowed him a loophole to escape the proper punishment for such a crime, upon the pretense that he was a mere agent.

The charge of the judge, rightly construed, really means nothing more than this; that his claim of agency was no excuse for his crime; and that he was liable to indictment and punishment as a principal, in keeping this bawdy house, notwithstanding that he professedly acted as an agent for the owner, in renting the premises and collecting the rents.

The language of the learned judge, in his charge to the jury, stating the law applicable to the case of an agent situated like the defendant, may perhaps be subject to some criticism, but in substance the rule was stated correctly; and the jury could not have misunderstood the meaning of the judge.

I think the conviction was right, and the judgment should be affirmed, and the proceedings remitted to the court of sessions, to be carried into effect.

[MONROE GENERAL TERM, June 1, 1863. *E. D. Smith, Johnson* and *J. C. Smith,* Justices.]