## Case No. 15,322.

### UNITED STATES v. HASKINS.

[3 Sawy. 262.] [1]

District Court, D. California.   Feb. 4, 1875.

CRIMINAL LAW—ARREST IN DIFFERENT DISTRICT —REMOVAL FOR TRIAL— TERRITORIAL COURTS—JUDICIARY ACT, § 33.

1. An offender. after indictment found in one district, may, under that section, be arrested in any other district, and committed and removed, or bailed, as the case may be, for trial in the district where the indictment was found.

[Cited in U. S. v. Brawner, 7 Fed. 88; U. S. v. Rogers. 23 Fed. 661; Re Dana, 68 Fed. 895.]

2. A duly authenticated copy of the indictment is sufficient evidence. if uncontradicted, to justify the commitment of the offender, and a warrant for his removal if bail is not given.

3. For an offense against the United States committed in an organized territory. the offender may be arrested in any district of the United States, and removed to the territory for trial. if the territorial courts have cognizance of the offense.

4. Territorial courts are "courts of the United States." as that designation is applied in section 33 of the judiciary act [1 Stat. 91].

[Cited in U. S. v. Jones, 5 Utah, 552, 18 Pac. 238.]

Proceeding for the removal of an offender from one district to another for trial.

Section 33 of the judiciary act enacts: "That for any crime or offense against the United States, the offender may, by any justice or judge of the United States or by any justice of the peace or other magistrate of any of the United States where he may be found agreeably to the usual mode of process against offenders in such state, and at the expense of the United States, be arrested, and imprisoned or bailed as the case may be. for trial before such court of the United States as by this act has cognizance of the offense. And copies of the process shall be returned as speedily as may be into the clerk's office of such court, together with the recognizances of the witnesses for their appearance to testify in the case; which recognizances the magistrate before whom the examination shall be may require on pain of imprisonment. And if such commitment of the offender, or the witnesses shall be in a district other than that in which the offense is to be tried. it shall be the duty of the judge of that district where the delinquent is imprisoned. seasonably to issue, and of the marshal of the same district to execute a warrant for the removal of the offender, and the witnesses, or either of them, as the case may be, to the district in which the trial is to be had. * * *" 1 Stat. 91. In the corresponding section of the Revised Statutes. section 1014. the phraseology is changed in

1 [Reported by L. S. B. Sawyer. Esq.. and here reprinted by permission.]

some respects. In the first clause instead of saying the offender may be arrested for trial before such court of the United States "as by this act has cognizance of the offense," the language now is "as by law has cognizance of the offense." Section 9 of the organic act of Utah establishes district courts for the territory, and enacts: "And each of the said district courts shall have and exercise the same jurisdiction in all cases arising under the constitution and laws of the United States as is vested in the circuit and district courts of the United States." And section 16 provides as follows: "The constitution and laws of the United States are hereby extended over and declared to be in force in said territory of Utah, so far as the same, or any provision thereof, may be applicable." 9 Stat. 453. "The trial of all crimes, except in cases of impeachment, shall be by jury; and such trial shall be held in the state where the said crimes shall have been committed; but when not committed within any state. the trial shall be at such place or places as the congress may by law have directed." Const. U. S. art. 3, § 2.

In this state of the law, Joseph W. Haskins was indicted by a grand jury in the territory of Utah for an offense against the United States—the offense charged being perjury—and a warrant was issued to the marshal of the United States for Utah, for his arrest. Haskins being found in the state of California, an affidavit was made before the United States district judge, setting out the finding of the indictment, that it is still pending, and that the defendant is in the state of California; and praying for a warrant for his arrest. Upon this affidavit, and the exhibition of an authenticated copy of the indictment a warrant was issued, and the defendant arrested. At the examination before the judge. the identity of the defendant was admitted. also the authenticity of the indictment. and that it is still pending. No evidence was offered by the defendant. Upon this. the attorney for the United States asks that the defendant be committed or bailed for trial before the court to which the indictment was returned, and if bail be not given that a warrant for his removal. to the territory of Utah. issue. For the defendant it is claimed that the thirty-third section of the judiciary act has no application to proceedings for the arrest and commitment of an offender who has been indicted; that the judge acts under that section as a committing magistrate for the purpose of inquiring whether the accused shall be held to answer before a grand jury. It is also claimed that the above-mentioned section does not and was not intended to apply to a case where it is sought to remove an offender from a district within a state to one within a territory. The defendant further insisted that the proceedings before the judge have not been conducted "agreeably to the usual mode of process against offenders" in this

state; and that a certified copy of the indictment did not show probable cause to believe an offense had been committed by the defendant, and was insufficient evidence, uncontradicted, to justify the arrest in the first instance, or the commitment of the defendant at the examination.

John M. Coghlan, U. S. Atty., and G. W. Gordon, for the United States.

H. H. Haight and Delos Lake, for defendant.

HILLYER, District Judge. The first question to be answered is, whether in a criminal case in which the defendant has been indicted in one district of the United States, he can be arrested and committed in another district, in the mode pursued in the present case, and upon such commitment removed to the district in which the crime charged was committed for trial.

While the practice in the several districts has not been entirely uniform, so far as 1 can find after a somewhat careful search, the propriety of an arrest and removal substantially in the mode pursued by the government in this case, has never been questioned by any judge. If there be any other mode, it is not regarded as the only one or as exclusive of this.

The practice is so stated in Conkling's Treatise (page 630), by the author, as well in cases of arrest after indictment found as before, if the offense is triable in some other district than that in which the arrest is made. In Murray's Treatise on Proceedings in the United States Courts (page 29), the course pursued in this case is laid down as the proper one, and neither of these authors regard a commitment as essential, if the proceeding is before the district judge, to justify him in issuing his warrant for the removal of the offender.

In Ex parte Alexander [Case No. 162], the defendant was arrested and brought before a commissioner of Massachusetts for examination, and the only evidence of probable cause was a certified copy of an indictment returned to the circuit court of the United States for Louisiana. No evidence was offered by the defendant. After the defendant had been committed, the district attorney applied to the district judge for a warrant of removal, and the question was, whether the course pursued was the true one. The learned judge of the district of Massachusetts held that the proceedings had been conducted properly, and said also that there were doubts as to whether the court in Louisiana could issue a warrant to arrest the defendant wherever found. He held further, that a certified copy of the indictment was sufficient evidence to authorize the committing magistrate to commit the accused to be bailed for trial in the district where the indictment was pending.

One Clark was arrested on a warrant issued by a commissioner of New York to answer to a charge of conspiring to defraud the United States in Michigan. A hearing was had, and the proof thereat consisted of a copy of the indictment found in Michigan, with further proof that it was still pending and that a warrant had been issued by the court before which it was found. Upon this the accused was committed. When brought before Judge Benedict on habeas corpus, that learned judge held the evidence to be sufficient and remanded him to the custody of the marshal. In doing so he said that the question was not whether the proceedings in the district court of Michigan would not have been sufficient to justify the arrest and detention of the defendant had that court seen proper to issue its bench warrant directly to the marshal of New York; that the proceeding seemed to have been an original one in which the indictment was introduced as evidence sufficient to justify the commitment for trial in Michigan. Ex parte Clark [Case No. 2,797].

An application was made to the judge of the district of Tennessee, for a warrant to arrest and remove one Jacobi to Arkansas, for a contempt committed in the Arkansas district. Jacobi had not been committed to answer, and it was held that no warrant for the removal of the accused in any case can be issued until he has been arrested and imprisoned; and that if the accused offered bail it was his right to be discharged on bail. "My opinion is also," says the judge, "that the certified copy of the proceedings of contempt and the attachment are sufficient not only to authorize the United States attorney to make complaint, but also the issuing of a warrant precisely as a certified copy of an indictment would be in any other case of crime, and also prima facie to justify the imprisonment of the defendant if he did not give bail." U. S. v. Jacobi [Case No. 15,-460]. It was also held, in U. S. v. Shephard [Id. 16,273], that a removal is only authorized after arrest and commitment for want of bail. So that in the last two cases it seems to have been considered that the course taken by the government in the present case is not only the proper but the only one.

There is some correspondence between Mr. Justice Miller and Judge Love of the Iowa district, bearing upon this question, reported in 1 Woolworth, 422. A warrant had been issued by a commissioner in Illinois to arrest the defendant for examination. The warrant and copies of the affidavits used before the commissioner, were submitted to Mr. Justice Miller, in Iowa, for an order to the marshal of Iowa to make the arrest. This course seems to have been taken in conformity with the opinion of Judge Drummond. Justice Miller, however, held that the accused could not be removed before examination in the district where he was arrested. Judge Love agreed with this, and added that his practice was, in cases in

which an indictment had been found, to have the accused brought before him for identification, and upon that to issue his warrant for removal without further examination, for, he says: "I hardly suppose we could go behind the indictment."

The language of the statute is, that for any offense against the United States, the offender may be arrested, etc. Nothing is said expressly, or by fair implication, limiting the power to arrest and imprison or bail, to those offenses, only, for which no indictment has been found. The second clause of section 33, does, in my judgment, contemplate an examination before the magistrate, as a prerequisite to removal. But an examination can be had after indictment found as well as before; if after, the indictment can be used as a piece of evidence. Whether in such case the indictment is conclusive, or the merits of the charge may be gone into on the examination, are questions not necessary now to decide, as the defendant did not offer any testimony. The construction given to this section, by so many eminent judges, ought to have great weight, especially as for more than eighty years it does not seem to have been departed from.

I conclude, then, that an offender, after indictment found in one district, may, under this section, be arrested and imprisoned or bailed, as the case may be, for trial in any other district the courts of which have cognizance of the offense. This view is strengthened by the consideration that it is, if not certain, at least extremely probable, there is no other mode by which the defendant can be removed. The act of congress, respecting fugitives from justice (1 Stat. 302), in pursuance of article IV, § 2, Const. U. S., provides a mode by which offenders against state and territorial laws, who have fled from justice, may be delivered up to the authorities of the state or territory demanding them, but makes no provision for the case of those persons who have committed offenses against the United States in one district and have fled to another. If the defendant cannot be reached under this act, and in my judgment he cannot, there remains but one other course possible besides the one adopted in the case now under consideration, that is, for the judge of the district where the indictment was found to issue his warrant to the marshal of this district, where the defendant now is. Such a course has been alluded to in several of the cases above cited, but always with an expression of doubt as to the power of the judge of one district to issue a warrant which will justify the arrest of an offender anywhere in the United States, or a warrant addressed to the marshal of any particular district outside of his own.

Section 27 of the judiciary act provides that it shall be the duty of a marshal to execute throughout his district all lawful precepts directed to him, and issued under the authority of the United States. In its usual form a capias is directed to the marshal of that district in which the court issuing it has jurisdiction to try the offense, and commands him to arrest the defendant if he shall be found in his district. By the provisions of the act of March 2, 1792 (1 Stat. 333), subpœnas in criminal cases for witnesses, in any district, may run into any other district. There is no similar provision in regard to other process in criminal cases, and this gives some ground to conclude that congress having expressly declared that one kind of process might run throughout the United States, intended to exclude other process not mentioned from having such operation. This point, however, is believed never to have been judicially determined. Judge Lowell, in 1871, said he was not aware of any decision of a court or judge upon the question, but that the power of a judge to issue a warrant which would run throughout the United States had been much doubted. In Conkling's Treatise it is positively stated that a capias can only be executed within the district, and when issued by a district judge must be directed to the marshal of his district, the criminal jurisdiction of the judge being confined to his district. Conk. Prac. pp. 620, 643. The attorney-general's office, the late Chief Justice Taney being then attorney-general, decided that a judge of the District of Columbia could lawfully issue a warrant for the arrest of a person, then in Virginia, for an offense committed in the District of Columbia. He said, however, that doubts from respectable authorities having been stated, he advised an application to the chief justice of the United States for a warrant which he thought would doubtless be obeyed without question. 2 Op. Attys. Gen. U. S. p. 564. The same view was taken by the office in 1864, but in this last opinion it is also stated that "there is another procedure which may be resorted to" and reference is made to section 33 of the judiciary act. 11 Op. Attys. Gen. U. S. p. 127. Thus, while the procedure by simple warrant running throughout the United States has always been doubted and questioned when spoken of, that under the thirty-third section of the judiciary act seems never to have been doubted as proper as well in cases of arrest after indictment found as before. Certainly the proceeding by arrest and examination, in the district where the defendant is found before removal, is far more merciful than the other, for if the warrant of the district judge of Maine is authority for an arrest in California, a person may be arrested here and conveyed across the continent without an opportunity even to show that the marshal has mistaken his identity.

The defendant has admitted that the copy of the indictment is duly authenticated, and has raised no question on its form or substance. He has, however, made the point, that it is not sufficient proof of probable cause to justify the commitment of the de-

fendant. The cases cited above show that a certified copy of an indictment is always considered sufficient for that purpose if un-contradicted, and in this case no proof was offered by the defendant. Such is the evidence on which the governor of a state acts when the extradition of a fugitive from justice is demanded under the act of congress above cited. Section 1550 of the Criminal Code of California provides that a certified copy of an indictment may be received as evidence by the examining magistrate. So that if the language of section 33, that the arrest shall be agreeably to the mode of pro-cess against offenders in the state, means that all the proceedings, and not merely the process, shall be governed by the state law, this evidence may be received on an examination like the present, and, as has been shown, is sufficient, when uncontradicted, to justify commitment.

In my judgment, then, the defendant must be committed or bailed to answer for the offense charged, unless the fact that the district where the offense is triable is within the territory of Utah precludes his removal to that district.

The question for determination is, whether the provisions of the thirty-third section of the judiciary act, touching the arrest and removal of offenders against the United States, must be limited in their operation to cases arising in those districts which embrace a state or some portion thereof? And the answer must be in the affirmative if the words "district in which the trial is to be had," in the third clause of that section, refer only to districts established or organized under that act. The act of 1789 divided the United States into thirteen districts. Since that time, as states have been admitted new districts have been organized, and so far as I can ascertain it has never been questioned that the general provisions of the judiciary act applied to the new districts without any express enactment of them for such districts; although by a narrow construction of the language it might be held to apply only to those courts and districts organized, and to which cognizance of crimes is given, by that act. The provision is that if the commitment of an offender is in a district other than that in which the offense is to be tried, the judge shall issue his warrant for the removal of the offender to the district in which the trial is to be had. If, then, an offense against the United States may be tried in a district of Utah territory, there is nothing in the language of this provision neces-sarily forbidding a construction which will justify the removal of an offender there for trial. The organic act of Utah does extend the constitution and laws of the United States over the territory so far as the same may be applicable. It also makes provision for the organization of three district courts therein, and further provides "that each of the said district courts shall have and exer-cise the same jurisdiction in all cases arising under the constitution and laws of the Unit-ed States as is vested in the circuit and dis-trict courts of the United States." Thus these courts have cognizance of all offenses committed in their respective districts, and as such an offense can only be tried in the district where it is committed, the offender, if he escapes from the territory, must go un-punished, unless he can be removed there for trial; and this only can be done under and by virtue of the provisions of the judi-ciary act. No other provision of law for such a case can be found, and it does not seem probable that congress has left it whol-ly unprovided for. For, if it is doubtful that the warrant of a district judge of the United States can be executed out of his dis-trict, it is certain that the warrant of a terri-torial judge cannot run out of his territory. In Clinton v. Englebrecht, 13 Wall. [80 U. S.] 434, the supreme court held that there were no "district courts of the United States," in the sense of the constitution, in the territory of Utah; that although jurisdiction was con-ferred upon them to try cases arising under the constitution and laws of the United States, this jurisdiction was no part of the judicial power conferred by the constitution on the general government; that these courts were the legislative courts of the territory, created in virtue of that clause of the consti-tution which authorizes congress to make all needful rules and regulations respecting the territories of the United States. It seems to me to follow from this, that the warrant of a judge of a territorial court, can no more run throughout the United States than can that of the judge of a state court. The case of Benner v. Porter, 9 How. [50 U. S.] 244, makes this clearer, if possible. The court there say that congress must not only ordain and establish inferior courts, but the judges must possess the constitutional tenure of office, before they can become invested with any portion of the judicial powers of the Union.

It is doubtless true that the provisions of the judiciary act are, for the most part, con-fined in their application to courts of the United States in the sense of the constitution. In Hornbuckle v. Toombs, 18 Wall. [85 U. S.] 648, it was held that the clause in the or-ganic act of a territory extending the laws of the United States over the territory had the effect to import laws of a general character and universal application, but whether, when acting in the capacity of United States cir-cuit and district courts, invested with the same jurisdiction in all cases arising under the constitution and laws of the United States, the territorial courts were to be gov-erned by any of the regulations affecting the circuit and district courts of the United States, was a question stated but not decid-ed. Now the provisions of section 33 are of universal application, and are plainly intend-ed to cover every offense against the Unit-

ed States, committed within the jurisdiction of any of its courts.

Another clause in the section ought to be noticed. The language is that the offender may be imprisoned or bailed for trial before such "court of the United States" as by law has cognizance of the offense. Is this intended as a limitation of the power to arrest and imprison for any offense given in the context? I think not. The plain intention is to provide for any and every offense against the United States. The crime charged in this case is such an offense and is triable before the district court of the third judicial district of Utah. While the district courts of Utah are neither state courts nor United States courts in the sense of the constitution, they are still courts established and organized under the authority of the United States, sitting in a territory belonging to the United States and exercising their jurisdiction conferred upon them by that government. The whole territory is under the plenary control of the general government, and the districts, while they are territorial districts, are still districts within which certain offenses against the United States must be tried if tried at all.

It appears to me that, although the district courts of Utah are not courts of the United States, as defined in Clinton v. Englebrecht, [supra], they are in another sense not improperly styled courts of the United States as being organized by that government under the authority to make needful regulations for the territories. They are spoken of as such in acts of congress and in opinions of the supreme court. Thus, in Hunt v. Palao, 4 How. [45 U. S.] 589, the territorial court of Florida is spoken of as a court of the United States, in contradistinction to a state court, and in Clinton v. Englebrecht the court speak of these courts as acting, in cases arising under the constitution and laws of the United States, "as circuit and district courts of the United States." So far, then, as these courts have exclusive jurisdiction over crimes committed against the United States they may, it seems to me, be held to be included in the term "courts of the United States" as used in the thirty-third section of the judiciary act. I cannot see that any sound rule of construction is violated by so doing. The act is remedial in its character, and I do not find any good ground for giving it so narrow and technical a construction as is contended for by the defendant, the practical effect of which must be to leave offenses committed in a territory where they cannot be reached or punished if the offender succeeds in escaping to some state.

My conclusion is that the defendant must be committed, unless he give bail in the sum of $3,000 to answer to the charge against him before the court to which the indictment was returned. If bail be not given, a warrant for his removal will be issued as the law directs.

The defendant, having been committed, was subsequently brought before SAWYER, Circuit Judge, on habeas corpus. After hearing, he was remanded to the custody of the marshal.