HON JEFFERSON P. KIDDER,

## THE TERRITORY v. STONE.

1. EVIDENCE: BAWDY HOUSE: GENERAL REPUTATION.    Evidence of the general reputation and character of a house is admissible in evidence, as tending to show the fact that it is kept as a bawdy house.

2. EVIDENCE: PERMITTING HOUSE TO BE USED　Where defendant is charged with permitting a house to be used as a bawdy house, evidence that such house was listed for taxation the same year, in the name of defendant, is admissible on the question of ownership, the owner being required himself to list his property for taxation, under oath.

3. PERMITTING: CONSTRUCTION OF STATUTE.　One who owns and has control of a house, and, with knowledge of its illegal use, remains passive and without wholly approving or consenting, fails to interfere to forbid or prevent, is guilty of *permitting* such use.

4. PRACTICE.　*It seems* that assignments in a motion for a new trial in a criminal case, that " the verdict is contrary to the evidence," and " the verdict is not sustained by the evidence," without specifying in what particulars the evidence is insufficient, are sufficiently definite to be considered.

5. QUERY.　Whether, when the evidence is insufficient to warrant a conviction, the power given the Court to " advise an acquittal " is discretionary or obligatory; whether defendant may ask such instruction, and failing to do so, waive any right to present the question after verdict; whether, "insufficiency of the evidence," in all cases a question of law.

6. SETTING ASIDE VERDICT.　Where there is legal evidence to prove or tending to prove every essential part of the offense, the verdict will not be disturbed by the Court.

7. CERTIFICATE.　A certificate of the Judge that the record contains, *in substance,* all the evidence given upon the trial, is sufficient to authorize the Court to review the evidence.

8. LEASE.　Defendant cannot escape the truth, by calling his agreement to have a bawdy house kept, a *lease* or *deed,* even though he give it the appearance of the one or the other by way of coloring the transaction.

*Writ of Error to the Yankton County District Court.*

THE facts are stated in the opinion.

*S. L. Spink* and *C. J. B. Harris,* for plaintiff in error.

I. A certificate in the language following, to-wit: " Upon reading the foregoing exceptions and finding the same correct, I hereby certify the same to be correct, and to contain in substance all the evidence which was given upon the trial of the above action," is sufficient to authorize the Appellate Court to review the evidence and determine whether the same is sufficient to warrant conviction. (*The People v. Getty,* 49 Cal., 581; *The People v. Fisher,* 51 Cal., 319; *The People v. York,* 9 Cal., 421.)

II. The Court erred in admitting evidence to prove that the house in question was listed on the tax list of 1878, to the defendant. The only object of such evidence was to show ownership of the house alleged to have been a house of ill fame, in the defendant, and this was not the best evidence to show that fact.

III. The Court erred in charging the jury as follows: "On this point I charge you that to make the defendant liable under the law he must either actually consent to the alleged unlawful use or silently acquiesce in it, and a mere failure on his part to interfere so as to prevent the alleged illegal use is not enough; consequently the prosecution must show acts and circumstances to satisfy the jury that the defendant having knowledge of an unlawful use and purpose, such as alleged in the indictment, not only remained inactive, but directly or tacitly consented; and the burden of proof is not changed, and the defendant is not required to show steps taken by him to manifest his dissent." This language is contradictory, uncertain—calculated to mislead the jury, and is not the law.

IV. Before the jury were authorized to convict in this case there must have been evidence before them sufficient to satisfy their minds beyond a reasonable doubt that the defendant knew that the house in question was kept as a house of ill fame or prostitution. There is no evidence whatever in the record showing or tending to show that the defendant knew this fact. (*The State v. Leach*, 50 Mo., 535.)

V. Before the jury were authorized to convict in this case they must have been satisfied from the evidence, beyond a reasonable doubt, not only that the defendant knew that the house in question was kept as a house of ill fame or prostitution, but that he consented to such use. Simply a failure to prosecute, or to take steps to eject the occupant of the house, is not enough. There was no evidence whatever upon the trial, or in the record of this case to show that the defendant ever consented to such use of the house in question. (*The State v. Abrahams*, 4 Iowa, 541; *The State v. Abrahams*, 6 Iowa, 117.)

VI. The evidence in this case shows that the defendant sold the house in question to the occupant, agreeing to make a deed therefor on compliance with certain conditions.

*French & Davis*, for defendant in error.

I.   There was no error in receiving evidence of the general reputation of the house.   (*The Territory v. Chartrand*, 1 Dak., 379.)

II.   There was no error in receiving evidence of the listing of the house in the name of plaintiff in error:

1.   Because it was competent as an admission by him of ownership or control, subsequently to the time when, as he claimed on the trial, he had ceased to be the owner, he being a resident of Yankton county.   (Political Code, Chap. 28, §§ 39, 15.)

2.   Because it tended to show that the contract " A " was intended by the parties as a lease.

III.   The exception to the charge of the Court was not well taken.   (2 Bishop Cr. Pro., § 121.)   A statement of the law less favorable to the plaintiff in error, would not have been erroneous. (1 Bishop Cr. L., § 1098, and ante.)

IV.   The fourth assignment of error will not be considered.   It is too general, and compels the court to gather the complaints of the plaintiff in error from the argument rather than from the record.   (*Franklin Fire Ins. Co. v. Updegraff*, 43 Penn. St., 350, 358; 8 Neb., 135, and cases cited.)

V.   Even if the assignment of error be sufficient, this record does not, we submit, present the question here, whether there was any or sufficient evidence to justify the verdict:

1.   By a request to the Court to direct an acquittal for want of evidence, or for some equivalent charge, this might have been, but it was not, on the trial, made a question of law, reviewable in this court on exception, and the basis of an application to the District Court for a new trial, under subdivision five of section 423, of the Code of Criminal Procedure.   (*The Territory v. Gay*, Dak. Sup. Ct.; *The People v. Jones*, 31 Cal., 565, 571; *Richardson v. Boston*, 19 How. U. S., 263, 268; *Peasants v. Faut*, 22 Wall., 120; *Barrett v. The 3d Av. R. R. Co.*, 45 N. Y., 628, 632; *United States v. Anthony*, 11 Blatch., 201, 210; *The People v. Bennett*, 49 N. Y., 137, 141; *The People v. Welsh*, 49 Cal., 174, 181; *United States v. Hayden*, 52 How. Pr., 471, 477.)

2.   It is not ground of reversal that the Court omitted to give directions upon points of law which might arise in the cause, where it was not requested by either party at the trial.   If either party deems any point presented by the evidence to be omitted in the charge, it is competent for such party to request an opinion from the Court upon the point.    *If he does not it is a waiver of it.* (*Pennock v. Dialogue*, 2 Peters, 1, 15;  *The Territory v. Bannigan.* 1 Dak., 452;  *The People v. Ah Wee*, 48 Cal., 237;  *The People v. Haun*, 44 id.; 96;  *Crow v. Becker*, 5 Robt., 271;  *Parsons v. Bedford*, 3 Peters, 433.)

3.   By not objecting to submitting the case to the jury, without an instruction that there was a want of evidence, the plaintiff in error conceded that there was *some* evidence tending to prove every essential part of the offense, and consented to a decision by that tribunal, and having taken his chance of a favorable verdict cannot now be heard to allege that the verdict is without evidence. (*Barrett v. The 3d Av. R. R. Co.*, 45 N. Y., 628, 632;  *Cheatham v. Wilbur*, 1 Dak., 335, 347;  *The Territory v. Bannigan*, 1 Dak., 452, 469;  *Lowell G. L. Co. v. Bean*, 1 Allen, 274;  *Rowe v. Stevens*, 2 J. & Spencer, 436, 441–3;  *Crow v. Becker*, 5 Robt., 271, etc.;  63 Barb., 15;  54 id., 367;  *The People v. Coffman*, 24 Cal., 230;  *Parsons v. Bedford*, 3 Peters, 433.

4.   Therefore the plaintiff in error having waived the right to insist upon the matter we are considering, as a *question of law*, he could and did in his motion for a new trial, insist upon it only as a question of fact, in the determination of which he here alleges the District Court erred.   But no exception lies to the decision of the District Court on a *matter of fact* in refusing a new trial, (Code Criminal Procedure, § 421;) and this court has jurisdiction to "review only the record and bills of exception upon matters of law."   (Code Criminal Procedure, § 472.)

5.   The United States constitution, (Article VII of Amendments), declares that " no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of common law."   The only re-examination of a verdict of a jury on the merits, allowed according to that procedure, is upon a motion for a new trial in the same court in which the verdict was ren-

dered. This constitutional provision precludes a review on error of the trial court on such a motion. Therefore any construction of our Statute, by which this court could review the decision of the District Court in refusing a new trial for an alleged error of the jury in finding a fact, would render it obnoxious to the Organic Law and void. (*Parsons v. Bedford*, 3 Peters, 433; *United States v. Gilbert*, 2 Sum., 19; *United States v. Wood*, 1 McArthur, 241; *Milton v. Tillotson*, 2 How., 395, 4; *United States v. Haskins*, 3 Sawyer, 262; 2 Binney, 89; *Pomeroy v. Bk. of Ind.*, 1 Wall., 592; *Laber v. Cooper*, 7 Wall., 566, 571.)

VI. The only cause for which this court can reverse a judgment in a criminal case is error of law appearing in the record or by exception taken at the trial.

VII. There was sufficient evidence to justify the verdict. The evidence was circumstantial, the effect and tendency of which, it was peculiarly the jury's province to determine. Their action would not be set aside were it reviewable in this court. (*The People v. Woody*, 48 Cal., 80; *Chess v. Chess*, 1 Penn. Rep, 32, 41.)

The judgment of the District Court should be affirmed.


SHANNON, C. J.—The indictment charges that the defendant did unlawfully and knowingly permit a certain building owned by him to be kept and maintained as a house of ill fame, resorted to and visited by divers persons for the purpose of prostitution, unlawful sexual intercourse and lewdness, and for other lewd, indecent, and obscene purposes.

It is founded upon sections 370 and 372, of Chapter 33, of the Penal Code, which are as follows: "§ 370. Every person who keeps any bawdy house, house of ill fame, of assignation, or of prostitution, or any other house or place for persons to visit for unlawful sexual intercourse, or for any other lewd, obscene or indecent purpose, is guilty of a misdemeanor." "§ 372. Every person who lets any building or portion of any building knowing that it is intended to be used for any purpose declared punishable by this chapter, or who otherwise permits any building or portion of a building to be so used, is guilty of a misdemeanor."

To this indictment the defendant pleaded not guilty, was convicted, and moved for a new trial. His motion was denied, and judgment was pronounced against him, for which he brings error to this court.

There are four assignments of error: *First*, in admitting evidence of the general reputation of the house alleged to have been kept as a house of ill fame. *Second*, in admitting evidence to prove that the said house was listed on the tax list of 1878 to the defendant. *Third*, in charging the jury, among other things, as follows: "On this point I charge you, that to make the defendant liable under the law, he must either actually consent to the alleged unlawful use or silently acquiesce in it; and a mere failure on his part to interfere or to prosecute so as to prevent the alleged illegal use, is not enough. Consequently the prosecution must show acts and circumstances to satisfy the jury, that the defendant having knowledge of an unlawful use and purpose such as alleged in the indictment, not only remained inactive but directly or tacitly consented; and the burden of the proof is not changed, and the defendant is not required to show steps taken by him to manifest his dissent." *Fourth*, in overruling defendant's motion for a new trial:

1. As to the first assignment, in relation to admitting evidence of the general reputation of the house, it is sufficient to state that this court, in the case of *The Territory v. Chartrand*, (at June term, 1877, 1 Dak. R., 379,) unanimously held such evidence admissible, as tending to establish the fact charged.

2. There is no force in the second allegation of error. Under our revenue system, every owner is himself required, each year, to list all his property under oath. As the property was listed for 1878 to the defendant, the fair presumption was, that it was done as the law requires. The evidence was, therefore, admissible on the question of ownership, and as a circumstance tending to throw some light upon the nature of the contract of July, 1877.

3. In order to arrive at a proper understanding of the third assignment of error, it is important to premise that the Court, before instructing the jury as specified, had, after declaring the law applicable, charged them as follows:

VOL. 2—22

1. "The first question, therefore, for you to determine is, was this particular house, at and before the time mentioned in the indictment, kept as a bawdy house, a house of ill fame, or of assignation, or was it kept for persons to visit for unlawful sexual intercourse, or for any other lewd, obscene or indecent purpose? The question is, was this house so kept and so used? The Supreme Court of the Territory has declared that, for the purpose of establishing whether a house is of this kind and nature, the general reputation and character of the house is admissible in evidence, and is competent before the jury—competent as tending to show the fact as to whether it is a house of that description. Now, the prosecution in every criminal action is bound to prove all the material allegations beyond a reasonable doubt. Is it, or is it not, in your mind, beyond a reasonable doubt, that this house was so used and so kept? If you find it was not, then that ends this case. If you find it was so kept and used, beyond a reasonable doubt, then you pass to the other allegations contained in the indictment.

2. "The next point in natural order is the question, was the defendant before and at the time named, the owner of the house, and was the house under his control and management, so that he exercised the powers of an owner by the law of the land?" "With these facts the question is, are you satisfied, beyond a reasonable doubt, that the defendant was, at the time alleged, the owner of the property, and that the property was under his control and management? If you are not so satisfied, beyond a reasonable doubt, then the case stops; but if you find that he was, then you proceed farther and come to the next question in order."

3. "Did the defendant, James M. Stone, unlawfully permit this building to be kept and maintained as a house of ill fame, resorted to and visited by divers persons for the purpose of prostitution and unlawful sexual intercourse and lewdness, and for other lewd, indecent and obscene purposes and knowingly permit the same to be so as aforesaid used? If you will remember, the Statute, or clause of the law I have read, declares that any person who should permit any building, or portion of a building, to be so used, is guilty of a misdemeanor."

It was just at this point, and in direct connection with it, that

the Court introduced that portion of the charge which is complained of as error, to-wit: " On this point I charge you, that to make the defendant liable under the law, he must *either actually consent* to the alleged unlawful use *or silently acquiesce in it;* and a mere failure on his part to interfere, or to prosecute, so as to *prevent* the alleged illegal use, is not enough. Consequently the prosecution must show acts and circumstances to satisfy the jury, that the defendant having knowledge of an unlawful use and purpose, such as alleged in the indictment, not only remained inactive but *directly or tacitly consented;* and the burden of the proof is not changed, and the defendant is not required to show steps taken by him to manifest his dissent." " In case of a reasonable doubt as to whether his guilt is satisfactorily shown, he must be acquitted."

Both by the Penal Code and the Code of Criminal Procedure, it is declared that " the rule of the common law, that penal statutes are to be strictly construed, has no application to this Code." By the former Code, " all its provisions are to be construed according to the *fair import of their terms,* with a view to effect its objects and to promote justice." According to this standard of construction, the Court evidently placed the law in a light quite favorable to the defendant. The law was stated as if it read that, every person who *consents* that any building, or portion of a building, shall be so used, is guilty of a misdemeanor. It is true that the words "to permit" are sometimes used as the equivalent of " to consent to." But what is the fair and ordinary import of the word "*permits*," as it is employed in the Code? Does it not mean " allows?" Or less strictly, " tolerates" or " suffers?"—as, to tolerate a nuisance. When it is said that a man *permits* a building to be so used, does it not commonly mean that he suffers, or allows, it to be done without *interference* or prohibition? And that he allows or permits negatively, by not preventing?

Yet the Court instructed the jury that " a mere failure on his part to interfere, or to prosecute, so as *to prevent* the alleged illegal use, is not enough;" and further, that " the defendant is not required to show steps taken by him to manifest his dissent." The jury were instructed that, apart from all this, and beyond it, they

must find acts and circumstances to satisfy them that the defendant *having knowledge* of such unlawful use and purpose, not only remained inactive, *but directly or tacitly consented.*

A man may allow or permit, by merely abstaining from prevention, when he has the power to prevent. He may tolerate or suffer (and thereby permit) a state of things, and by such permittance not wholly approve of it. But as to the particular law under consideration, his such permittance should not render him inexcusable, else the object of the law would not be effected, and public justice would not be promoted. For although not entirely approving, yet being the owner and having full power of control, he thereby aids, countenances, and abets in the commission of a misdemeanor, and by the reason of the law, becomes a principal. Every one must so use his own rights, and his own property, as not to infringe upon the rights of others. In order to protect society and to shield public morals, it is but reasonable that every owner of a building should so control his property, as not to allow, or suffer, or to permit its use and occupation for lewd, obscene, or other prohibited purposes. The owner along with his rights, has also public duties to perform. If he so allows or suffers his property to be used, by the law, as well as in ethics, he becomes a principal mover, and a regular participant, in the public offense. In regard to this law, the owner who, having knowledge, can and does not forbid or prevent, might safely be deemed to have permitted it  Therefore, when viewed in the light of this usual acceptation and common import of the word, if the defendant were the owner and had control; and if he had knowledge of the illegal use; and yet if he remained passive without wholly approving or consenting, but failed to interfere so as to forbid or prevent, he should be considered, without other proof, as permitting the building to be so used. His mere inaction in these regards, would it seem, under such circumstances, be deemed sufficient, in the absence of all other evidence of consent or permission. Under the instructions, the jury were to find something more than inactivity in order to arrive at a direct or an implied consent.

That the word "permits" as used in section 372, should be construed as if written "allows," is apparent from section 393, in

relation to the keeping of gambling establishments. The language there is, " who knowingly lets the same," (a building, etc.,) or *allows* it to be used or occupied for gambling." (See also sections 409, 729, 385 and 474.)

It also appears from the first legislation in this Territory, in 1862, that the word "*suffer*" was employed as the equivalent of "permit." (See Crim. Code of 1862, sections 95, 100, 128 and 130.) Likewise in early legislation in the States, and even in the colonies, the word "suffer" was used as a synonym of "permit." For example, in Virginia, by Act of 19th January, 1798, it was provided that any person who shall *suffer* certain games to be played in his house, etc. In Ohio, by Act of March 12, 1831, persons who *suffer* gambling in their houses, are liable to conviction; and so in Kentucky. In Pennsylvania, " if any person shall procure, *permit, suffer and allow* persons to collect and assemble in his house, * * * or other place whatsoever, under his control," for the purpose of gambling, he is guilty, etc. In an older Statute of the State, " permit and allow " are used to convey the same meaning. By R. S. of Massachusetts, page 387, section 16, if any innholder shall keep, or *suffer* to be kept any implements of gaming in his house, or shall *suffer* any persons to game therein, every person so suffering such gaming, shall be punished, etc. (See also same R. S., p. 388, § 17.) It is provided by Mass. Gen. Sts., Chap. 88, Sec. 70, that whoever, without license, keeps or suffers to be kept in a house or building by him actually occupied or owned, a table for the purpose of playing at billiards for gain, shall be subject to a fine. (*Comm. v. Adams*, 109 Mass., 344; *Comm. v. Dean*, 1 Pick., 387; *Comm. v. Bolkom*, 3 Pick., 281; *Comm. v. Arnold*, 4 Pick., 251; *Comm. v. Drew*, 3 Cush., 279; *Comm. v. Stowell*, 9 Metc., 572; Wharton's Cr. L., Vol. 3, § 2452.) Many other analogies as to the proper construction might be adduced, but the above is sufficient.

Where words in a Statute are not technical, or words of art, the presumption is a reasonable and a strong one that they were used by the Legislature in their ordinary, popular, or general signification. Statutes enjoin obedience to their requirements; and unless the contrary appears, it is to be taken that the Legislature did not use the words in which its commands are expressed, in any

unusual sense.   For these reasons, whose cogency is obvious, the law is settled that in construing Statutes the language used is never to be lost sight of; and the presumption is that the language is used in no extraordinary sense, but in its common, every-day meaning.   And this is consonant with the requirement of our Code, which abrogates the old doctrine that penal statutes are to be strictly construed, and announces the new rule that they are to be interpreted according to the fair import of their terms, with a view to effect the objects the Legislature intended, and to promote justice.

The strictest construction, capable of being given to the law now before us, would be, that "to permit" means to grant *express* license or liberty to use the building for the illegal purpose.   Very properly the court did not go quite so far.   But it excluded that species of acquiescence which is ordinarily implied by inactivity after knowledge.   It held that abstinence from opposition, interference or prevention was not enough to convict, even if all the other constituents of the offense were satisfactorily shown.   Evidently such a permittance as is contemplated, may fairly be shown to exist, by and through the sole medium of natural and reasonable inference.   And it is well understood that such acquiescence, after notice, would involve a party in the common law offense, in those jurisdictions where this offense is recognized.   (3 Wharton Cr. L., § 2392.)                                                        ,

After full consideration I am now of the opinion that, although there is no error in the charge of which this plaintiff in error has any right to complain, yet the Court did not state the law with requisite accuracy and fullness.   It is true the District Court followed the cases of *Abrahams v. The State* and *State v. Abrahams,* (4 Iowa, Clarke, 541, and 6 Iowa, 117,) in which the word *permit* was construed in its strict sense, in opposition to its usual and common signification.   But the doctrine of these cases has, with propriety, been questioned, and it is submitted that such interpretation is not authorized under our Codes, nor under former legislative use of the term.   This view is strengthened when it is reflected that generally at common law such offenses as are set forth in sections 370 and 372, of the Penal Code, were punishable

by indictment, and that this was on the principle that such offenders were guilty of having established a public nuisance, or of having aided and assisted in the continuance of one. And by section 431, a public nuisance consists as well in *omitting* to perform any duty required by the public good, as in unlawfully doing any act detrimental thereto, or which offends public decency· (*Comm. v. Harrington*, 3 Pick. Rep., 26; *People v. Townsend*, 3 Hill, 479; *People v. Erwin*, 4 Denio, 129; *Lowenstein v. People*, 54 Barb., 299.)

Lastly we come to consider the fourth assignment of error, to-wit, " in overruling defendant's motion for a new trial." The bill of exceptions discloses that the defendant, before judgment, moved to set aside the verdict and for a new trial, assigning as reasons, *inter alia*, "because the verdict is contrary to the evidence," and, again, " because the verdict is not sustained by the evidence."

Counsel for the defendant in error in their brief contend that this assignment ought not to be considered because it is too general, and compels this court to gather the complaints of the plaintiff in error in this regard from the argument rather than from the record. Secondly, that even if sufficient, the record does not present *a matter of law* as to the sufficiency of the evidence to sustain the verdict. It is alleged that by a request to the Court to direct an acquittal for want of evidence, or for some equivalent charge, this might have been, but it was not, on the trial, made a question of law reviewable here on exception, and the basis of an' application to the District Court for a new trial, under subdivision six of section 423 of the Code of Criminal Procedure. And this position is said to be fortified by the numerous authorities quoted, and notably by *Burden v. People*, 26 Mich., 162–7; *Barrett v. R. R. Co.*, 45 N. Y., 628; and *United States v. Haskins*, 3 Sawy., 262. (See Brief of Defendant in Error, pages 3 to 7.)

As to the first point, in civil cases, when the exception is to the verdict upon the grounds of the insufficiency of the evidence to sustain it, the objection must specify *the particulars* in which such evidence is alleged to be insufficient. (Code Civil Procedure section 279.)

There is, however, no such express, corresponding provision in

the Code of Criminal Procedure; but by section 414 of the latter, it is generally provided that "the point of the exception must be particularly stated in writing," etc. This assignment is a very broad, latitudinarian one, and it would not be tolerated in a civil action, in the absence of a bill of exceptions pointing out the particulars. For instance, and as to the several essentials in the present case, it is not specified that the evidence is deficient as to ownership and control; or as to the illegal use; or as to knowledge of such use; or as to the permittance. It is so entirely general as to overleap all particulars, and to require this court to review all the evidence, in order to seize the points that may be presented in argument. It does not elucidate the generality of the objection below, nor in any way aid in limiting it. But passing over this, and reserving it; for the purposes of this case we shall consider the assignment sufficient.

Any consideration of the second point, involves a scrutiny of the Code of criminal Procedure. By section 412, *on the trial* of an indictment, exceptions may be taken by the defendant, to the decision of the Court upon a *matter of law* by which his substantial rights are prejudiced, and not otherwise, in three enumerated classes of cases; in the last of these is embraced this, to-wit: " In deciding any question of *law* not a *matter of discretion*, or in charging or instructing the jury upon the law, on the trial of the issue." On all criminal trials, except for libel, questions of law are to be decided by the Court, and questions of fact are to be decided by the jury; and although the jury have the power to find a general verdict which includes questions of law as well as of fact, they are bound, nevertheless, to receive as law what is laid down as such by the Court. (Section 347.) That is to say, in returning a general verdict they necessarily decide such questions of *law* as well as of fact as are involved in the general question of guilt. In this connection is to be viewed that part of section 368, which provides that "if at any time after the evidence on either side is closed, the the Court deemed it *insufficient* to warrant a conviction, it may advise the jury to acquit the defendant." This appears to be an extension to criminal actions of the modern decisions in civil cases, which have established this rule, to-wit, that before the evidence

is left to the jury there is or may be in every case a preliminary question for the Judge—not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed.    That is, conceding to all the evidence offered the greatest probative force which according to the law of evidence it is fairly entitled to, including all just inferences to be drawn therefrom, is it sufficient in law to justify a verdict?    And in civil actions, where there is no dispute about facts, or conflict as to them, and the law arising upon them is conclusive against the right of the plaintiff to recover, it is proper for the Court so to instruct the jury.    Again, if the evidence be *not sufficient* to warrant a verdict for the plaintiff, it is the duty of the Court to instruct the jury accordingly.    (*Herbert v. Butler*, 7 Otto 319; *Commissioners v. Clark*, 4 Otto, 278.)    The test in civil cases, is as to the *legal* sufficiency of the evidence to serve as the foundation of a verdict. This practice has superseded the ancient practice of a demurrer to evidence; and it answers the same purpose, and should be tested by the same rules.    A demurrer to evidence admits not only the facts stated therein, but also every conclusion which a jury might fairly or reasonably infer therefrom.    Now in all criminal actions, according to section 368, if the evidence is insufficient to warrant a conviction, the Court may advise the jury to acquit; and if the Court may thus advise, or instruct, is there anything to prevent counsel from asking such advice?    Is the power thus given to the Court discretionary, or is it obligatory?    Must defendant ask for such instruction, or otherwise be considered as waiving any right to present the question after verdict?    These are the points substantially raised in the argument before us.

We have thus far been considering such proceedings *on the trial* of the issue, as may be made the subjects of a bill of exceptions. Let us now revert to such matters as are authorized *after trial* and *verdict*.    The court in which a trial has been had, *has power* to grant a new trial when a verdict is against the defendant by which his substantial rights have been prejudiced, upon his application, in those cases only which are prescribed by section 423, among which is, "when the verdict is contrary to law or evidence."

So at common law had the trial court such power, but it was held to be discretionary, and generally not to be reviewable. (1 Chitty Cr. Law, 656–7.) It is also to be noted for whatever is in it, that the phraseology " contrary to evidence " is different from that used in section 286 of the Civil Procedure as to new trials, which is " *insufficiency* of the evidence to justify the verdict." But by section 420 of the Criminal Procedure, a step in addition to the common law is taken, and *exceptions* are allowed to a decision of the court or Judge upon *a matter of law*, in refusing a motion for a new trial. Moreover, by section 472, this court has jurisdiction, on writ of error, to re-examine and review the record and bills of exceptions in a criminal action, upon *matters of law*, decided in the District Courts, and the defendant may sue out such writ when his motion for a new trial is refused. (Section 475.)

Suppose that in the District Court the sole ground alleged for a new trial should be, that the verdict is " contrary to the evidence," what, irrespective altogether of section 368, is the proper construction? All agree that a verdict is illegal where there is no evidence at all to support it. Again, where there is no conflict in the evidence and no dispute about facts, and the law arising upon them is conclusive against the right of the prosecution to have a verdict, it is also conceded that a matter of law arises, and that it is the province of the Court to interfere. But where there is *some* legal evidence to prove, or tending to prove every essential part of the offense and there is a verdict of guilty, how can it be said to be against, or opposed to, and therefore *contrary* to the evidence? In such case is not the *quantum*, or sufficiency, a question for the jury? In *People v. Magallones*, 15 Cal., 428, it is held that where there is evidence even tending to prove some one material fact necessary to justify a conviction, the verdict of the jury finding defendant guilty is conclusive as to such point. In 1 Greenl. Ev., 49, it is said that " whether there be any evidence or not, is a question for the Judge; whether it is sufficient evidence, is a question for the jury." And to this tenor seems to be the case of *People v. Jones*, 31 Cal., 566, although two of the Justices thought that the question, whether a defendant in a criminal case is entitled to a new trial upon the ground that the verdict is " contrary to the evidence," is

a question of law and not a question of fact, under their constitution. (*State v. Millain*, 3 Nev., 467; *State v. Van Winkle*, 6 Nev., 352; also *Hill v. People*, 16 Mich., 351; *People v. Adwards*, 5 Mich., 22.)

In connection with the authorities cited by defendant in error, as to the rule in civil cases in New York, it is well to notice *Halpin v. Third Av. R. R. Co.*, 40 N. Y. Superior C. R., 175, in which, although the trial court was not asked to direct the jury to find for defendant on the ground of insufficiency of evidence, yet it is held that the revisory power exists " in any stage and in any of the forms prescribed by law," and the appellate tribunal " may examine and weigh the evidence and determine its sufficiency." " The Court in thus reviewing the evidence determines as *matter of law* whether it is sufficient, and so far it becomes a question of law." And again, " where the evidence is undisputed its sufficiency may be made wholly a question of law."

But in *criminal* cases in New York, it appears that " the Court may order a new trial if it shall be satisfied that the verdict was against law, or against the weight of evidence, or that justice requires a new trial." (*Jefferds v. People*, 5 Park. Cr. R. 567; *O'Brien v. People* 46 N. Y., 281; *Manuel v. People*, 48 Barb., 548.) And again, that before the trial court ought to exercise *the power* to grant new trials where it is alleged the evidence is insufficient, or where verdicts have been rendered against evidence, " the case should be such as to have made it the duty of the Court to advise the jury to acquit the defendant, or that it was unsafe for them to convict him." (*People v. Goodrich*, 3 Park. Cr. R., 518.)

In criminal cases in California (whose system of criminal practice is similar to ours,) the general rules laid down by the Supreme Court are as follow: " There must be such overwhelming evidence against the verdict as to justify the inference that it was rendered under the influence of passion, or prejudice, or bias of some kind, to justify any interference *on our part* with the action of the jury." (*People v. Vance*, 21 Cal., 400.) It is held in *People v. Brown*, 27 Cal., 500, that " it requires a clear case—one in which there is an absence of evidence against the prisoner, or a decided preponderance of evidence in his favor, to justify an interference with the

verdict of the jury." Again, in *People v. Baker*, 39 Cal., 687, " unless the record as presented discloses a manifest abuse of the legal discretion which the trial court is required to exercise on motion for new trial, on the ground that the verdict is contrary to, or not sustained by the evidence, we would not feel justified in reversing the order of the Court." When the evidence is conflicting, the Supreme Court will not grant a new trial. (*People v. Gill*, 45 Cal., 285; *People v. Hamilton*, 46 Cal., 540.) And so generally, where the evidence is circumstantial merely, or where the credibility of witnesses is in question, the Court will rarely, if ever, interfere with the verdict. (11 Ills., 36; 16 Mass., 345; 3 Wh. Cr. L., 3110; *People v. Simpson*, 50 Cal., 304.)

Although this opinion has thereby been much lengthened, still we have thought it but proper thus to comment upon and direct attention to the fifth point in the brief of the defendant in error; and having done so, this is all that need now be said in reference to it. It is not at present necessary to decide the question; for, as to this case, we shall consider it in the light most favorable to the plaintiff in error. And so viewing it, we think this is one of those cases in which the verdict ought not to be disturbed by this court.

The substance of all the evidence is certified, and stated in the bill of exceptions. It discloses that the defendant, as appeared by the record of deeds in the proper office of Yankton county, was the owner of the building from the year 1875 to the date of the indictment, to-wit, November 16th, 1878. *Secondly*, that " the general reputation of said house in the community where situated; during November, 1878, (before the 16th,) and previously for the last *three or four years*, as a house of lewdness or prostitution, *was shown*." *Thirdly*, that in point of fact, "it was also *shown* that during that time, men not living in said house were in the habit of visiting it at very late hours in the night—sometimes three, four, or five such visits in one night; and a number of women were inmates of it, whose behavior and language therein, and upon the streets, was lewd and indecent, and who were commonly reputed in the community to be prostitutes." *Fourthly*, "that said house was kept by a woman going under the name of Lou Harper,

during the summer and fall previous to November 16, 1878." It was, *fifthly*, likewise in evidence that the defendant was not merely a resident of the county, but that he had been seen in the town of Yankton for nearly three years.

It was also in evidence, and admitted, that under such circumstances, the defendant, on the 18th of July, 1877, entered into a certain written agreement with the woman, Mariah L. Harper, which paper is indorsed "*Bond for a Deed*," is marked A, and is made part of the bill of exceptions. Singularly enough, this contract was voluntarily offered by the defendant, and it was relied upon as a complete defense. It is a very lengthy and elaborate paper, with peculiar features. The bill of exceptions states that " it was also shown that Mariah L. Harper lived in said house where paper " A " was made, and that the same was signed there," to-wit, on the 18th of July, 1877, at which time, as the evidence shows, it was known as a house of prostitution. Moreover the paper admits full ownership by defendant on and before that date ; it provides for the payment of twelve per cent. interest by her, monthly in advance, on a principal sum of $3,500, and for the payment of interest, monthly, " on all sums, whether principal or interest, after due." Time is made of the essence of the contract, and on any failure on her part, he " shall have the right to declare this contract void, " without notice to the party of the second part, or her assigns ; and thereupon to recover all the interest which shall have accrued upon this contract up to the day of declaring it void, as *rent* for the use and occupation of said premises," etc,

It was conceded upon the argument here, and it is plain, that the main contention before the jury was, whether, under all the evidence, this instrument was what on its face it purports to be, or. was it a cover for a lease ? Was it, or was it not, a mere contrivance to veil the defendant's knowledge of the use of the house, and to screen him from criminal prosecution ? Now it is to be remembered, that this bill of exceptions, like a demurrer, admits not only the facts stated therein, but also every conclusion which a jury might fairly or reasonably *infer* therefrom. Manifestly the jury inferred from all the circumstances, that the defendant had

not only knowledge of the illegal use of his house, but was willing, for gain, to continue the nuisance, and that paper "A" was only a disguise to conceal the real intentions of the parties. We cannot say that unreasonable inferences were drawn, or that the jury went astray in coming to these conclusions. The instrument as presented by the defendant had nothing to support it but itself. It was not acknowledged, and of course it had not been recorded. From apparent secresy, it emerged into publicity only on the trial. There were no indorsements of payments, nor any legally shown. It was made and signed in the house then occupied by the woman, and the fair presumption was that the owner of property valued at three thousand five hundred dollars, would, under all the surroundings, know something of the character and standing of the person he was about to deal with, as well as of the character of the inmates, and the purposes for which his house was used.

All this unexplained, with nothing extrinsic to show the good faith of the transaction, and especially when joined with the intrinsic evidence furnished by the whole body of the writing itself, would warrant the jury in inferring, what they virtually found, that the contract was meant for a lease, or was a device to secure rent. And, consequently, they would naturally enough inquire, why was the defendant at so great pains to make a lease in such a curiously circuitous form, if he did not really know how the building was intended to be used, and the true character of its occupants. The defendant chose to present this sole and unsupported piece of evidence, and he must be content to abide by the decision of the jury, and of the court below, upon it.

We shall dismiss the subject by stating that the contract in question very much resembles the one referred to in *Brockway v. The People*, 2 Hill's R., 558, a case not cited on either side. In relation to that instrument, Cowen, J., said: "It is true, there is nothing on the face of the paper under which the nuisance in question was established, evincing any illegal purpose. * * * A man can no more escape the truth, by calling his agreement to have a bawdy house kept or other crime committed, a lease or a deed, even though he give it the appearance of the one or the other by way of coloring over the transaction, than he can neutralize the

effect of poison by calling it an antidote.    It is a fraud upon the criminal law, and impotent for the purposes of disguise or defense. *    *    *    The universal rule in regard to fraud, usury and crime is, that whatever specious or delusive appearance parties may give their contracts or other instruments intended as the means of mischief, the law will assign them their true character and call them by their right names."

Under sections 419 and 483, of the Code of Criminal Procedure, a certificate of the Judge in the language following, to-wit : " Upon reading the foregoing exceptions and finding the same correct, I hereby certify the same to be correct, and to contain in substance all the evidence which was given upon the trial of the above action," is a sufficient return to authorize this court, in a proper case, to review the evidence, and determine whether the verdict is contrary to evidence.    It is impossible to conceive of a case in which it is necessary to bring up to this court all the evidence which was introduced at the trial.    In almost all conceivable cases it is sufficient to give the substance of the evidence, or of the testimony of each witness.    (*People v. York*, 9 Cal., 421 ; *People v. Getty*, 49 Cal., 581 ; *People v. Fisher*, 51 Cal., 321.)

The assignments of error are overruled, and the judgment of the District Court must be

AFFIRMED.

All the Justices concurring.