### CADWELL *against* THE STATE OF CONNECTICUT:

#### IN ERROR.

To support an information for a violation of the statute of 1845, *c.* 20. against keeping a house of ill fame, it is necessary for the prosecutor to prove, 1. that the general reputation of the house was that of a bawdy-house, and 2. that it was such in fact.

That a certain house sustains the reputation of a bawdy-house, is a fact to be proved, like any other fact, by the testimony of witnesses having knowledge of its existence.

Where an information for keeping a house of ill fame, charged the offence as having been committed after the statute prohibiting it went into operation; and evidence was offered to prove, that the house was reputed to be a house of ill fame *previous* to that time; it was held, that such evidence was admissible, as conducing to prove that it sustained the same reputation afterwards.

The admission of such evidence does not give the statute on which the information is founded, an *ex post facto* or unconstitutional operation.

Where on the trial of such information, the prosecutor offered a witness to prove, that divers persons of lewd and dissolute character, for two years next previous to the time when the statute went into operation, resorted to the house in question for the purpose of prostitution and lewdness, among whom was *M,* a lewd person, who died before the passage of the statute; this testimony being offered in connexion with other evidence, by which the prosecutor claimed to have proved, that the same persons, or persons of a similar character, resorted to that house, after the passage of the statute; it was held, that the testimony of this witness, in connexion with the evidence which accompanied it, fairly conduced to prove the character of the house and the purpose for which it was kept, after the statute took effect, and was therefore admissible.

THIS was an information, filed by the state's attorney, at the term of the county court of *Hartford* county, in *August* 1845, against *Woodruff Cadwell,* charging, That on the 15th day of *June* 1845, and on divers other days and times between that day and the filing of this information, said *Cadwell* un-

HARVARD LAW LIBRARY

*Hartford,*
*June, 1845.*

Cadwell
*v.*
The State.

lawfully kept a house, situated on the *West* side of *Commerce* street in the city of *Hartford,* which house, during all said time, was and is a house of ill fame, resorted to for the purpose of prostitution and lewdness; all which was well known to, and permitted by, said *Cadwell;* against the peace, and contrary to the form of the statute in such case made and provided.

On the trial before the county court of *Hartford* county, *August* term 1845, the public prosecutor introduced evidence to prove, that the accused had kept a house of ill fame, resorted to for the purpose of prostitution and lewdness, during the time specified in the information; and claimed, that it was in violation of the act passed at the session of the General Assembly in *May* 1845. It appeared, that this act went into operation on the 14th of *June* 1845.

In the course of the trial, the public prosecutor offered the testimony of *Walter P. Chamberlin* and others, to prove, that one *Eunice Roberts,* and divers other persons of lewd and dissolute character, for two years or more, previous to and down to the 15th of *June* 1845, resorted to said house for the purpose of prostitution and lewdness; and that, among others, one *Maria Alford,* a lewd woman, about two years ago, resorted thither for that purpose. To the testimony regarding *Maria Alford,* the accused objected, on the ground that the fact offered to be proved was before the passage of the act on which the prosecution was founded, and that she died before the passage of that act. The court admitted this, in connexion with the other testimony; all of which was admitted, not as proving a distinct offence under the act, but on the ground that if the jury should find, as it was claimed by the public prosecutor, that the same persons, or persons of similar character, resorted to said house, on or after the 15th of *June* 1845, they might properly infer, that they resorted thither for the same purpose that they did previous to that time.

The public prosecutor also offered evidence to prove, that previous to and down to the 15th of *June* 1845, the general reputation of said house, was that of a house of ill fame. To this the accused objected, on the ground that it was hearsay evidence, and was before the passage of the act. The court admitted it, on this ground only : if said house, on or after the 15th of *June,* was resorted to by lewd persons, though such

specific acts as would of themselves constitute it a house of ill fame, could not be proved, yet from such persons being suffered to resort to a house that down to that time had sustained such a character, the jury might infer, that the same character continued to be attached to it.

The public prosecutor further offered evidence to prove, that during the period alleged in the information, the general reputation of *Cadwell's* house was that of a house of ill fame. To this the accused objected, on the ground that it was hearsay testimony. The court admitted it, first, as evidence of the fact that it was a house of ill fame ; and secondly, because if lewd persons resorted to a house sustaining such a character, it tended to prove, that they resorted thither for the purpose alleged in the information.

The jury found the accused *Guilty ;* and judgment being rendered against him, he thereupon brought a writ of error in the superior court ; which was reserved for the advice of this court.

*Hungerford* and *Robinson,* for the plaintiff in error, contended, 1. That the expression " house of ill fame," as used in the act of 1845, means neither more nor less than a *bawdy-house* in fact, without regard to its reputation. In the first place, this is its usual and popular signification. Secondly, a different construction would render a portion of the act previously existing (*p.* 162. *sec.* 185. ed. 1838.) senseless. Thirdly, the object of the statute was to prevent all persons from keeping or frequenting lewd houses, for the purposes of prostitution, whatever might be their reputation ; whereas on the construction claimed by the public prosecutor, it would be no offence within the act to keep or frequent a brothel for the purpose of prostitution, unless it sustained a general bad reputation.

2. That reputation is no evidence of a crime, nor admissible to prove it. And a reputation for a course of conduct, innocent at the time, cannot be received as any evidence of the violation of a subsequent law prohibiting the like course of conduct in future ; as it would give the law an *ex post facto* operation, inconsistent with the provisions of the constitution of the *United States.*

3. That the testimony of *Chamberlin* was inadmissible for

*Hartford,*
June, 1846.

Cadwell
*v.*
The State.

HARVARD LAW LIBRARY

*Hartford,*
June, 1846.

Cadwell
*v.*
The State.

the purposes for which it was received. It was admitted as evidence from which the jury might infer a most material ingredient in the offence imputed by the information, *viz.* the purpose of those who frequented the house after the passage of the law. Now, in the first place, the permission given by the accused to lewd and dissolute persons to resort to his house for the purposes of prostitution, before the statute, was no offence within it. Nor, secondly, did the acts or motives of those who frequented the house, before the passage of the law, furnish any ground of inference, that either the same or other persons, who, after the passage of the law, resorted to the house, so resorted thither, with the same motives or for the same object.

4. That the testimony of *Chamberlin* was *irrelevant.* In the first place, it did not warrant the inference for which it was admitted. Secondly, its tendency was improperly to prejudice the jury. Thirdly, the accused would be taken by surprise, by evidence he could not be prepared to repel. Fourthly, the admission of this testimony would create improper and immaterial issues between the parties, having little or no bearing on the merits of the cause, and subjecting the accused to unnecessary expense. 1 *Greenl. Ev.* 57. & *seq. Commonwealth* v. *Catlin,* 1 *Mass. R.* 8. *Commonwealth* v. *Worcester,* 3 *Pick.* 462. 21 *Pick.* 142. *Viney* v. *Carss,* 1 *Esp. R.* 293. *Furneaux* v. *Hutchins, Cowp.* 807. *Holcombe* v. *Newson,* 2 *Campb.* 391. *Jackson* d. *Norris* & al. v. *Smith,* 7 *Cowen* 717. *Keith* v. *Taylor,* 3 *Verm. R.* 153. *Riley* v. *Gourley,* 9 *Conn. R.* 154.

*T. C. Perkins,* for the defendants in error, remarked, that in order to test the validity of the exceptions to the evidence, we are to look at the offence charged in the information, and at the statute on which it is founded. *Act* of 1845, *p.* 22. From these it appears, that the house must be, first, a house of ill fame ; and secondly, a house resorted to for the purposes of prostitution and lewdness ; and it is admitted, that both of these facts must be proved to have existed on or after the 15th of *June* 1845. The question then is, whether the testimony objected to tended to prove these facts ; and it is not to be rejected, if it tended to prove *either* ; for the other might be proved by other testimony. The general rule is, that all

the circumstances of a transaction may be submitted to the jury, if they afford any fair presumption or inference as to the matter in question. 1 *Stark. Ev.* 39. *Rosc. Ev.* 74. & seq. A house of *ill fame*, is one *reputed* to be a bawdy-house. To ascertain what reputation a house bore, on a certain day, you may enquire what reputation it had previously acquired and continued to sustain down to that day. So to ascertain for *what purpose* a house was resorted to, on a certain day, by certain persons, you may enquire for what purpose the same persons, or persons of a similar character, had previously resorted to that house. *Gibson* v. *Hunter*, 2 *H. Bla.* 288. *The State* v. *Watkins*, 9 *Conn. R.* 47. 53. To prove the *insanity* of a person, at a particular time, you may enquire what was his previous state of mind and conduct.

None of this evidence was *hearsay*, within the correct definition of that term. The witnesses were not called to prove what others *said*, but what *facts* existed. Reputation, however acquired, is a fact.

Storrs, J. The statute, on which the information in this case was founded, prohibits any person from "*keeping a house of ill fame, resorted to for the purpose of prostitution or lewdness.*" *Stat. of* 1845, *c.* 20. *p.* 22. The phrase, "house of ill fame," used in the first branch of this description of the offence, is often, and perhaps usually, adopted in common parlance, to denote a house which is not merely reputed to be, but which is, in fact, a brothel or bawdy-house; and if there had been nothing added to this expression in the statute, we should probably construe it in this its more popular meaning, rather than in its strict etymological sense, which refers to reputation and general belief, and not to actual character, on the ground that the legislature more probably intended to apply it, in its popular sense, to a person who was actually guilty of the offence, than to one who is generally suspected, but may be really innocent. But this part of the description of the offence intended to be prohibited, being immediately connected with another, which requires that such house should be actually a brothel or bawdy-house, we cannot construe it according to its popular signification, without imputing to the legislature the most palpable tautology. This, as a general principle, is to be avoided; and it is, moreover, a well estab-

lished rule, that statutes are to be so construed, that every word in them is, if possible, to take effect, that being according to the presumed intent of the legislature. For these reasons, we adopt the construction of this statute, which is most favourable to those who are accused under it, and which requires, that the house kept by him, should be, not only one of ill fame or reputation, and commonly believed to be a brothel, but that it should be actually one of that kind or description. It is, therefore, necessary for the prosecutor to prove, in the first place, its general reputation, and, in the next, its actual character as a brothel. It being necessary to prove this to be the general reputation of the house, that it sustained that reputation, was a fact to be proved, like any other fact, by the testimony of witnesses having knowledge of its existence. Testimony as to the reputation of the house would clearly be inadmissible, for the purpose of proving that it was in truth a brothel. Such testimony would be obnoxious to the objection that it is mere hearsay. It was, in this case, neither introduced, nor admitted, for that purpose, but only to show, that it sustained that reputation ; and it is no more objectionable for that purpose, than testimony of a similar character, which is so frequently adduced to prove the reputation of a person for truth, or any other quality. This disposes of the first objection made in the trial of this cause, to testimony as to the reputation of the house.

It is next objected, that it was not competent for the prosecutor to prove, that the house in question was reputed to be a house of ill fame, before the statute on which the information was founded took effect. The information alleges the offence to have been committed after the act went into operation. We have no doubt that testimony to show what the reputation of the house was, before the act went into effect, conduced to prove that it sustained the same reputation afterwards ; and that it was therefore admissible for that purpose. Evidence of the reputation of the house previous to a particular time, fairly conduces to show its reputation afterwards. Nor do we perceive, that the circumstance that the act went into effect after it had acquired a bad reputation, has any effect upon the relevancy of the testimony upon the question whether it sustained that reputation at a subsequent time. If the character of the evidence is such that it would ordinarily be rele-

vant to prove the fact sought to be established, and that be a material fact,—if independent of the circumstance that the act took effect after the existence of the fact proved, an inference could be legitimately drawn as to the existence of any other or a similar fact after the act took effect,—we do not think that the evidence is made irrelevant, or that the ground of inference which it furnishes is destroyed, by the act going into operation, at any particular time. This is a question respecting a natural and probable inference of the existence of one fact from the proof of another, or rather of the existence of a fact at one time from proof of the previous existence of a similar fact. We do not perceive how the circumstance that the act took effect at a particular time, destroyed the ground to infer, that the reputation of this house was bad, subsequent to that event, from the fact that it was bad previously.

It is urged, that the admission of this testimony gives the act on which the accused is prosecuted, an *ex post facto*, and therefore an unconstitutional, operation. It is not liable to this objection, on the ground that any new rule of evidence is introduced on the subject, since the law took effect ; because such evidence has always been admitted : nor on the ground that its admission had the effect either of making an act criminal, which was innocent at the time of its commission ; or an act which was then criminal, more severely punishable than when it was committed ; because it does not appear, that there was any claim or attempt, in this case, to convict the defendant below, on the ground that before the act took effect, his house either sustained the reputation of a brothel, or was in reality a house of that description. On the contrary, the prosecutor claimed to have proved, that the house both sustained that reputation, and was also a house of that description, after the act went into operation. The effect given to the act on the trial, was, therefore, prospective only.

The remaining question respects the admissibility of *Chamberlin's* testimony. He was offered as a witness to prove, that one *Eunice Roberts*, and divers other persons of lewd and dissolute character, for two years or more next previous to the time when the said act took effect, resorted to the house in question, for the purpose of prostitution and lewdness, and among others, that one *Maria Alford*, a lewd woman, resorted there, about two years before the trial, for the same purpose.

HARVARD LAW LIBRARY

*Hartford,*
June, 1846.

Cadwell
*v.*
The State.

This testimony was offered, in connexion with other testimony, by which the prosecutor claimed to have proved, that the same persons, or persons of a similar character, resorted to said house, after the passage of the act. The testimony of *Chamberlin* as to the said *Maria Alford*, was objected to, by the accused, on the ground that the fact offered to be proved respecting her, and also her death, took place before the passage of said act. It was received in connexion with the evidence with which it was thus offered, not for the purpose of proving a distinct offence against said act, but for the purpose of showing, that those persons, who thus resorted to said house after the passage of said act, went there for the same purpose for which those mentioned by the witness, *Chamberlin,* resorted there before its passage. No stress has been laid on the fact that the said *Maria* died before the passage of the act; and that circumstance may, therefore, be disregarded. It has obviously no bearing on the question as to the inference to be derived from the fact that she and other persons of a similar character, resorted to said house for the purpose imputed to them. The other specific objection made to the evidence was, that the transaction testified to, took place before the passage of the act: it respected, not the character of the evidence, but the time to which it related. The question presented on this objection, is of the same nature as that which was made to evidence of the reputation of the house before the act took effect, and has been already considered; and the answer which has been given to that objection, applies fully to the present. The passage of the act, therefore, does not affect the relevancy of the testimony of *Chamberlin,* if it is admissible on other grounds. The court are of opinion, that it fairly conduced to prove, in connexion with the evidence with which it was introduced, the real character of the house, and the purpose for which it was kept, after the act was passed. If a house should be fitted up, by the occupier, for the purposes of a school, and young persons should resort there, for a considerable period, for purposes of being instructed by him, would not the fact that the same persons, and those of similar character, subsequently resorted to the same building, conduce to prove, that a school was continued there? So, in the present case, we think, that the circumstance that certain persons of lewd and dissolute character had, before

*Hartford,*
June, 1846.

Cadwell
*v.*
The State.

the time in question, been permitted, by the accused, habitually to resort to his house, for the purpose of prostitution, furnished a legitimate ground to infer, that when it was subsequently allowed to be resorted to, by the same persons and those of a similar character, it was for the same purpose. The testimony, being relevant to prove a material fact in the case, was properly received.

The superior court is therefore advised, that the judgment complained of should be affirmed.

In this opinion the other Judges concurred.

Judgment affirmed.