## Commonwealth of Pennsylvania *v.* Tillie Murr, Appellant.

*Evidence—Reputation of a bawdy house admissible.*

The general reputation of the inmates and frequenters of an alleged bawdy house may be proved, in order to establish the character of the place; and it is also competent to prove that the house itself has acquired the name of a bawdy house.

Argued March 8, 1898. Appeal, No. 203, Oct. T., 1897, by defendant, from judgment of Q. S. Lancaster Co., Aug. Sess., 1897, No. 7, on verdict of guilty. Before RICE, P. J., WICK-HAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Indictment for keeping a bawdy house. Before BRUBAKER, J.

At the trial of the case the court permitted the following questions to be asked sundry witnesses on behalf of the commonwealth: " Q. Prior to this complaint, what was the general or common reputation in the community of the house, as to what went on there?" And asked the following question itself: " Q. What is the general reputation of the house occupied by the defendant?" [1]

Verdict of guilty and sentence thereon. Defendant appealed.

*Errors assigned* were (1) in admitting in evidence the reputation of the house. (2) In charging the jury, " all that was necessary for a conviction was to prove that the reputation of the house was bad, and that in this case the reputation having

been proven to be bad there must be a conviction." (3) In refusing to make any record of the testimony of this case. (4) In refusing to make a record of the charge in this case. (5) In commenting upon a portion of the testimony and not upon the whole of it. (6) In charging the jury in omitting to make any comment upon the testimony submitted by the defendant. (7) In charging the jury upon the effect of a reasonable doubt in favor of the defendant. (8) In not directing the jury to return a verdict of not guilty upon the ground that there was no proof that the defendant was the owner or lessee of the house.

*B. Frank Eshleman* and *C. Reese Eaby*, for appellant.—The questions which form the basis of the first assignment of error were clearly inadmissible: Com. v. Stewart, 1 S. & R. 341; Henson v. State, 62 Md. 231; State v. Brunell, 29 Wis. 435; Toney v. State, 60 Ala. 97.

The fact that the defendant was the keeper of a bawdy house cannot be shown by general reputation: Burton v. State, 16 Texas App. 156; State v. Hand, 7 Iowa, 411; Franklin's App., 163 Pa. 1.

*Geo. A. Lane*, district attorney, and *Benj. C. Atlee*, for appellee.

OPINION BY WICKHAM, J., May 17, 1898:

This case comes before us in a very peculiar condition. Of the eight errors assigned, only the first rests on an exception. The second to the seventh inclusive relate to matters, nowhere disclosed by the record, and cannot, therefore, be considered. The eighth assignment, even if we had all the evidence and the whole charge before us, could not, under any circumstances, be sustained, as the court below was not asked to direct the jury to find for the defendant.

As to the first assignment it is too general and too meager, even as amended, to meet the requirements of our rules. But, as the liberty of the defendant is involved, and the district attorney, waiving all objections, joined with the appellant's counsel, in specially requesting us to pass on the question of law thus defectively presented, representing too, that the decision

thereof is, for reasons mentioned by him, of public importance, we have decided to overlook the informality.

The question, and the only one, before us is, whether the commonwealth has the right, on the trial of an indictment for keeping a bawdy house, to introduce evidence that the general reputation of the house is that of being a bawdy house. It is objected, for the defense, that evidence of this sort is mere hearsay and, therefore, inadmissible. " Fame, " says Crabb in his work on synonyms " has a reference to the thing which gives birth to it; it goes about of itself without any apparent instrumentality. . . . Hearsay refers to the receiver of that which is said, it is limited therefore to a small number of speakers or reporters. The fame serves to form or establish a character either of a person or a thing; it will be good or bad according to circumstances." There is a distinction, therefore, between ordinary hearsay, and evidence of repute, although reputation is necessarily established by the general opinion and expression of the community.

No authorities need be cited to show, that the general reputation of the inmates and frequenters of an alleged bawdy house may be proved, in order to establish the character of the place. Why then should it not be permissible to prove that the house itself has acquired the name of a bawdy house? On principle, it is hard to see any reason for admitting the former and excluding the latter, as an element of proof. The house naturally obtains its evil reputation from its visitors and inmates, and yet it is contended that, while the commonwealth may fully establish the bad repute of the latter, it should not be permitted to strengthen its case by showing that, as the result of the house being occupied and resorted to by lewd people, as well as by reason of other suspicious or incriminating circumstances, the general opinion of the neighborhood is that it is a bawdy house. We do not' hold that such evidence, standing alone, would be sufficient to establish the character of the place, but, we do think that it is a circumstance to be weighed with others. Nor do we wish to be understood as deciding that it is admissible at all, on the question as to who is the keeper of the house. It should never be regarded as more than an aid in ascertaining the character of the place. Owing to the difficulty experienced in getting witnesses to testify to facts, lying within their own

personal knowledge, as even the most depraved and abandoned are usually unwilling to either directly or indirectly criminate themselves, the necessity for such evidence, as we are here considering, is obvious.

The decisions in other states, on the question before us, are conflicting, and we know of no utterance of our own Supreme Court that will serve as a guide. The case of Commonwealth v. Stewart, 1 S. & R. 342, is not an authority in favor of the appellant. There the indictment was for keeping a disorderly house and the question condemned by the Supreme Court, one of the three justices dissenting, was, "whether the house was not a matter of general complaint by the neighbors, as disturbing them." It was held, that it was not competent to prove, by hearsay, what could have been shown by the neighbors who complained. As YEATES, J., says, in the case cited, a disorderly house is punishable, because "it disturbs the peace and quiet of the neighborhood." The disorder then must be such as can be seen or heard by outsiders, who can be called on to testify. With a bawdy house it is different. The bad conduct, occurring therein, is usually of such a kind as can only be proved directly by the testimony of the participants, and they cannot be compelled to incriminate and disgrace themselves. Hence it is, that evidence of the general reputation of the inmates and frequenters of the house is admissible, and for the same reason, proof of the general reputation of the place should also be allowed.

Among the authorities holding that such evidence is admissible, are O'Brien v. People, 28 Mich. 213; Betts v. State, 93 Ind. 375; State v. Brunell, 29 Wis. 435; State v. Smith, 29 Minn. 193; Morris v. State, 38 Tex. 603; Sylvester v. State, 42 Tex. 496; Drake v. State, 14 Neb. 535; Allen v. State, 15 Tex. App. 320; King v. State, 17 Fla. 189; Territory v. Stone, 2 Dakota, 155; State v. McDowell, Dudley (So. Car.), 346; 2 Whar. Crim. Law (8th ed.), sec. 1452. On the other hand, the admissibility of this kind of evidence is denied in Hensen v. State, 62 Md. 231; Wooster v. State. 55 Ala. 217; Toney v. State, 60 Ala. 97; Sparks v. State, 59 Ala. 82; Handy v. State, 63 Miss. 207; State v. Boardman, 64 Me. 523; Cadwell v. State, 17 Conn. 467; State v. Lyon, 39 Iowa, 379, and perhaps other cases.

We are not unaware that some of the decisions cited in behalf of the affirmative, are under statutes which use the term "house of ill fame" instead of "bawdy house." But, these terms are synonymous and are so recognized by legal writers, lexicographers and popular use. To say that one keeps a house of ill fame, means that he or she is the keeper of a bawdy house, or house of prostitution. We need waste no time referring to authorities in support of this proposition.

Being satisfied that no error was committed in admitting the evidence complained of, in the first assignment of error, the judgment must be affirmed.

The specifications of error are all overruled and the judgment affirmed ; and it is ordered that the record be remitted to the court below, to the end that the sentence be carried into effect.

