## Commonwealth *v.* Brink.

*Criminal law—Bawdyhouse—Reputation of house—Evidence.*

1. The general reputation of the inmates and frequenters of a bawdyhouse, may be proved in order to establish the character of the house. The general reputation of the house itself is competent.

2. Where the house is in a borough contiguous to a city, the reputation in the city of certain women who frequented the house, although living in the city, may be shown.

3. On the trial of an indictment for keeping a bawdyhouse, it is not necessary for the commonwealth, before introducing evidence of the general reputation of each particular frequenter or inmate of the house, to show that the defendant knew what that reputation was.

4. In such a case it is proper for the trial judge to call the jury's attention to the fact that the keeper of a licensed hotel is in a position to

know something of the conduct of the people in it and to regulate, to some extent at least, their conduct.

Argued March 7, 1912. Appeal, No. 25, March T., 1912, by defendant, from judgment of Q. S. Lackawanna Co., Oct. T., 1911, No. 330, on verdict of guilty in case of Commonwealth v. Jennie E. Brink. Before RICE, P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Indictment for keeping a bawdyhouse.   Before Mc-CLURE, P. J., specially presiding.

The facts appear by the opinion of the Superior Court.

Verdict of guilty, upon which the defendant was sentenced to pay a fine of $50.00 and undergo imprisonment in the county jail for one year. Defendant appealed.

*Errors assigned* were (1–57) various rulings on evidence and instructions.

*R. H. Holgate*, with him *Clarence Balentine*, for appellant, cited: Com. v. Howe, 35 Pa. Superior Ct. 554.

*T. A. Donahoe*, assistant district attorney, with him *David J. Reedy*, district attorney, and *R. A. Zimmerman*, for appellee.

OPINION BY RICE, P. J., April 15, 1912:

The defendant was indicted and convicted under sec. 43 of the Act of March 31, 1860, P. L. 382, of the offense of keeping and maintaining a common bawdyhouse. No authorities need be cited to show that the general reputation of the inmates and frequenters of the house may be proved in order to establish the character of the house. It is also now well settled by the great weight of authority that the general reputation of the house is competent: Com. v. Murr, 7 Pa. Superior Ct. 391; Com. v. Sarves, 17 Pa. Superior Ct. 407; Com. v. Bunnell, 20 Pa. Superior Ct. 51; Com. v. Salawich, 28 Pa. Superior Ct. 330.

The first, twenty-fourth and the forty-fourth, forty-

fifth, forty-sixth and fifty-seventh assignments relate to the testimony of residents of the borough of Dunmore, in which the house was situated, as to one or the other or both of these subjects. These witnesses testified, preliminarily, that they were residents of the borough and were familiar or were acquainted with the general speech of the people of that community and most of them testified to facts and circumstances which tended to corroborate that statement. We are of opinion that the court committed no error in holding that sufficient ground was laid for permitting them to testify, as they did, that from the general speech of the people in the borough of Dunmore the reputation of certain women, who were shown to have been inmates or frequenters of the house, for morality and chastity was bad, and that the reputation of the house in that regard was bad. Nor can we agree with counsel for appellant that anything was developed on the cross-examination of these witnesses which made it the duty of the court to strike out his or her testimony on these subjects.

Adverse comment is made on the form of the question put to the witnesses as to the reputation of the house, but precisely the same form of question was held to be permissible in Com. v. Bunnell, and we see no reason for departing from or modifying the ruling there made. It seems hypercritical to say that a house or building is sexless and insensate and therefore can have no reputation whatever for chastity or morality. No jury would fail to understand what the witnesses meant when they testified that the reputation of the house in this particular was bad.

Many of the other assignments relate to the admission of the testimony of police officers and others, residents of the city of Scranton, as to the reputation of certain women who were shown to be frequenters of the defendant's house but did not reside in the borough of Dunmore. In considering the relevancy of this testimony it is to be noticed, that the city of Scranton and the borough of Dunmore are contiguous and there is constant communica-

tion between the two places. There was evidence that these women frequently visited and occupied rooms in the defendant's house with different men. It is argued that the testimony of these police officers as to the reputation of these women was not competent because it did not relate to their reputation in the borough of Dunmore where the defendant resided, but was confined to their reputation in the city of Scranton. We think this objection is not well taken. The fact that the permanent habitations of these women, so far as they had any, were on one side of the imaginary line between the two municipalities and the defendant's house was on the other side, is no more conclusive against the admission of the testimony than would be the fact that the two places were in different wards of the city. To establish character by reputation the reputation must be among people who have had an opportunity of observing the person's conduct, as for example, in the neighborhood of his home, or in the group of persons with whom he follows his occupations or otherwise associates intimately: 2 Wigmore on Ev., sec. 1612. As was said by our Brother HENDERSON in Com. v. Howe, 35 Pa. Superior Ct. 554: "It is necessarily implied that the person inquired about should have been so related to the community in which he lived or acted as to have established a general reputation." It was there held that the mere fact that the witness heard the defendant's reputation discussed in a town other than that in which the defendant resided, did not qualify the witness to testify on the subject in the absence of evidence that the defendant was known in the place where the discussion took place, and had acquired a reputation there. The case is not authority for the proposition that under no circumstances may the reputation of a person be shown, except in the municipal division of the state in which he has his legal domicile. Even a woman not shown to dwell permanently in any particular house, but who is seen nightly traveling the streets in the manner described by some of the witnesses, may acquire a reputation which

may be given in evidence. And, while it is true that the reputation must be general, yet it is not necessary that it be unanimous nor that a majority of the people of the community have spoken regarding it. In other words, a general reputation may by inference be believed to exist, although the utterances actually heard by the witness, and used as the basis of his inference, may be and usually are those of a representative minority only:" 2 Wig. on Ev., sec. 1613. "While a witness should be cautious on this subject, and not be encouraged to testify that he is acquainted with the general reputation of another unless he knows the generally prevalent sentiment of those conversant with him, he is not to be repressed by telling him he must know what a majority say of him about whom he is called to testify:" Campbell, C. J., in Pickens v. State, 61 Miss. 563. We have alluded to the scope of the decision in Com. v. Howe and to the insufficient foundation laid for the admission of the character testimony there under consideration. We cannot agree with appellant's counsel that this case is in the same situation. The testimony as to reputation rests on much more secure foundation. We conclude without further elaboration that it was properly admitted.

One of the questions raised by the first assignment of error is, whether it was necessary for the commonwealth, before introducing evidence of the general reputation of each particular frequenter or inmate of the house, to show that the defendant knew what that reputation was. We are of opinion that it was not necessary. In determining whether the defendant was guilty of the charge, her knowledge of the practices conducted in her house, was necessarily involved, but this was a fact to be determined by the jury from all the evidence, and the general reputation for morality and chastity of the persons frequenting it was a pertinent circumstance. This was fully and adequately explained to the jury by the trial judge, and we find no error in what he said to the jury upon that subject.

Nor was there prejudicial error in the excerpt from the charge quoted in the fifty-eighth assignment of error. It was entirely appropriate to call the jury's attention to the fact that the keeper of a licensed hotel is in a position to know something of the conduct of the people in it and to regulate, to some extent at least, their conduct. The instruction did not imply either directly or inferentially that there was any legal presumption that the defendant had such knowledge as was necessary for her conviction of the specific charge for which she was being tried.

The contention that the instruction quoted in the next assignment assumed as an established fact that the defendant had assigned a little girl fifteen years old to a room with a man, is not sustained. In a careful and fair manner the judge explained to the jury the conflict of testimony upon this question of fact, and submitted its determination to them. This excerpt from the charge must be read in connection with what the court said in submitting the question of fact to the jury.

The contention that the charge was misleading and inadequate both as to the facts and the law, is not sustained. All of the defendant's nine points were affirmed, every question of fact involved in the case was fairly submitted to the jury and the law which they were to apply to the facts was correctly stated. The charge was clear, adequate and impartial, and there was abundant testimony, outside of the testimony relating to the reputation of the inmates and frequenters of the house and of the house itself, to sustain the verdict. All of the assignments of error are overruled.

The judgment is affirmed and the record is remitted to the court of quarter sessions of Lackawanna county with direction that the judgment be fully carried into effect, and to that end it is ordered that the appellant forthwith appear in that court, and that she be by that court committed to serve and comply with such parts of her sentence as had not been performed at the time this appeal was made a supersedeas.