Commonwealth of Pennsylvania *v.* Newhart, Appellant.

Argued October 8, 1929.

Before Porter, P. J., Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Francis E. Walter,* for appellant.—Evidence of reputation that defendant committed the crime charged in the indictment was improperly received: Commonwealth v. Jones, 280 Pa. 368; Commonwealth v. Gibbons, 3 Pa. Superior Ct. 408; Shaffner v. Commonwealth, 72 Pa. 60; Snyder v. Commonwealth, 85 Pa. 519.

Act of June 30, 1923, P. L. 982 offends the due process clause and the constitutional right to be confronted by witnesses: State v. Beswick, 13 R. I. 211; Hughes v. State, 19 Ohio Circuit Court 237; Carr v. Aetna Accident Company, 263 Pa. 87.

*R. C. Mauch,* District Attorney, for appellee.—Section 4 of the Act of June 30, 1923, P. L. 982 is constitutional: Commonwealth v. Tillie Murr, 7 Pa. Superior Ct. 391; Commonwealth v. Berryman, 72 Pa. Superior Ct. 479; Commonwealth v. Smith, 89 Pa. Superior Ct. 190; Commonwealth v. Ciccone, 85 Pa. Superior Ct. 316.

OPINION BY GAWTHROP, J., November 22, 1929:

Appellant, under sentence for maintaining a bawdy house on premises Nos. 514 and 516 Pine Street, in the City of Easton, brings to us for consideration certain rulings of the trial judge which are said to be erroneous, and the constitutionality of the Act of June 30, 1923, P. L. 982.

The first ruling complained of is that the Commonwealth could ask certain of its witnesses these questions: "Who is reputed to be running those places?" and, "Who has the reputation of keeping 514 and 516 Pine Street?" Appellant's contention is that these rulings were in violation of Section 4 of the Act of 1923, supra. That act is entitled "An act for the repression of prostitution and assignation; making it unlawful to solicit, aid or permit prostitution, or to use or permit the use of any place for the purpose of prostitution or assignation; making certain evidence admissible in proceedings under this act," etc. Its fourth section provides that "in the trial of any person charged with the violation of any of the provisions of this act, testimony concerning the reputation of any place, structure, or building, and of the person or persons who reside in or frequent the same, *and of the defendant,* shall be admissible in evidence in support of the charge."

We think that the argument advanced by appellant's counsel as to these rulings cannot avail him. Prior to the passage of the Act of 1923, the general reputation of the inmates and frequenters of an alleged bawdy house could be proved in order to establish the character of the place; and it was competent to prove also that the house itself had acquired the reputation of being a bawdy house. See Com. v. Murr, 7 Pa. Superior Ct. 391; Com. v. Ciccone, 85 Pa. Superior Ct. 316. The Act of 1923 specifically made such evidence admissible, but it went further by providing that the

reputation of the defendant shall also be admissible in support of the charge. The manifest purpose of the latter provision is to render admissible the reputation of the defendant in connection with, or with respect to, the offense charged. Evidence of the general reputation of the inmates and frequenters of a bawdy house probably would not tend to establish the connection of the proprietor with it. Doubtless it was to meet this situation, among others, that testimony as to the reputation of the defendant as to the trait of character involved in the offense charged was declared admissible for the Commonwealth. The effect of asking the Commonwealth's witnesses: ''Who was reputed to be running the house or houses?,'' was merely to establish appellant's reputation with respect to the control of the house. While the proper question was: ''What is the general reputation of the defendant in the community with respect to the house?,'' the result of the questions which were asked was the same as though the questions had been in proper form, that is, to prove the reputation of appellant in that respect.

It is argued that the provision of Section 4 of the Act of 1923, making testimony concerning the reputation of the defendant admissible in evidence in support of a charge of a violation of the act is unconstitutional and void, because it violates Section 7 of Art. III of the Constitution of Pennsylvania, which prohibits the passage of any ''local or special law, ...... changing the rules of evidence in any judicial proceeding or inquiry before courts,'' etc.; and also because it denies a defendant the right to be confronted with the witnesses against him as guaranteed by the sixth amendment of the Federal Constitution and the right to meet the witnesses face to face as guaranteed by Art. I, Section 9 of the Constitution of Pennsylvania. ''Classification, with the view of legislating for either class separately, is essentially unconstitutional, unless

a necessity therefor exists, a necessity springing from manifest peculiarities, clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class separately, that would be useless and detrimental to the others. Laws enacted in pursuance of such classification and for such purposes are, properly speaking, neither local nor special. They are general laws, because they apply alike to all that are similarly situated as to their peculiar necessities'': Ayars' Appeal, 122 Pa. 266. In referring to that statement of the law, President Judge RICE said in Com. v. Winkelman, 12 Pa. Superior Ct. 497: ''If this be true of laws enacted pursuant to a classification made by the Legislature, with the view of legislation for each class separately, it must be equally true of laws enacted for existing classes distinguished one from the other by manifest peculiarities, where, by reason of such peculiarities, legislation that might be demanded for one class would be wholly unnecessary and inappropriate for the others.'' On that principle it was decided in the Winkelman case that the Act of June 26, 1895, P. L. 387, making dying declarations competent in prosecutions for criminal abortions, where the subject shall die in consequence of such unlawful acts, is constitutional, that ''it was not enacted to meet the exigencies of a particular case —which probably was the kind of vicious legislation the framers of the constitution had specifically in view —but, with a manifestly proper qualification, it applies alike to the trial of all prosecutions in which the particular crime is charged,'' and that ''this limitation of the operation of the act to this exceptional class of cases ...... does not make it a special law, within the true intent and meaning of the constitutional provision.'' For the same reason we conclude that the Act of 1923 is not a special law changing the rules of

evidence in a judicial proceeding in contravention of Section 7 of Art. III of the Constitution.

Does this provision of the act deprive a defendant of his constitutional right "to meet the witnesses face to face" and "to be confronted with the witnesses against him?" There is a distinction between ordinary hearsay and evidence of repute: Com. v. Murr, supra. Evidence of reputation is a species of composite heresay. It has, however, a higher probative value than mere unsworn statements of a single person: 22 C. J. 211. But even pure hearsay evidence is admissible under the many exceptions to the common law rule rejecting such evidence. For example, the exception admitting dying declarations is as old as the rule itself. "It has uniformly been held that this exception to the rule was not abrogated by express provisions of constitutional law which secured to the person accused of a crime the right to be confronted with the witnesses against him": Com. v. Winkelman, supra. We have consistently held that evidence of the general reputation of the inmates and frequenters of a house and of the house itself is admissible against a defendant charged with keeping a bawdy house. As evidence of reputation of the house itself concerns a prime question in the case, that is, whether the house was a bawdy house, it seems that in principle there is no sound reason why such evidence should not be declared by the Legislature to be admissible on the question as to who is the keeper of the house. The statute was passed for a wise purpose, because experience had shown that the same reason for admitting evidence of reputation of the inmates and frequenters and of the place itself, exists for the admission of evidence of the reputation of the defendant in connection therewith. We are not prepared to hold that the Legislature did not have the power to extend the court made rule under which the reputation of the inmates

and of the house itself are admitted, by providing for the admissibility of evidence that the general reputation of the defendant was that of the proprietor of the house. The manifest intent was to limit the evidence to reputation in. connection with the offense charged. As so limited the act does not violate the constitutional guaranties under consideration.

The other questions raised are so devoid of merit that they require no discussion. The Commonwealth's proof of appellant's guilt was overwhelming. Appellant testified that she left the premises 514 and 516 Pine Street in the fall of 1928 (having sold the property) and was living in Monroe County. When she was asked by the district attorney whether she was living at 514 and 516 Pine Street before she went to Monroe County, she answered, "Yes, I was." To the question, "And you were running them as bawdy houses, weren't you?," She answered, "Well, I guess that is a known fact." She attempted to convince the jurors that although her own testimony amounted to a confession of guilt she should be acquitted, because she sold the premises and gave up and went to Monroe County to live. The attempt properly failed; she was convicted by the jury, and the record is free from harmful error.

The judgment is affirmed, and it is ordered that the defendant appear in the court below at such time as she may be there called and that she be by that court committed until she has complied with the sentence, or any part of it, which had not been performed at the time the appeal in this case was made a supersedeas.