## Commonwealth *v.* Mueller, Appellant.

Argued October 25, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ. (RENO, J., absent).

*Clyde P. Bailey,* of *Bailey & Critchfield,* for appellant.

*Jacob E. Kalson,* Assistant District Attorney, with him *Russell H. Adams,* District Attorney, for appellee.

OPINION BY KELLER, P. J., November 17, 1943:

The defendant has appealed from sentence upon a general verdict of guilty on an indictment charging him,

in two counts, with (1) using a certain building, situate at No. 816 Western Avenue, Pittsburgh, for the purpose of prostitution and assignation, and (2) with maintaining a disorderly house at that place. There is sufficient competent evidence in the record to sustain the verdict on both counts. The evidence was not confined to testimony that the general reputation of the defendant's rooming house was that it was a place of assignation and a disorderly house. Such evidence was properly admitted. See the last paragraph of section 512 of The Penal Code of 1939, P. L. 872, and *Com. v. Visotsky,* 129 Pa. Superior Ct. 86, 88, 89, 195 A. 148; *Com. v. Newhart,* 97 Pa. Superior Ct. 216; *Com. v. Brink,* 49 Pa. Superior Ct. 620; *Com. v. Ciccone,* 85 Pa. Superior Ct. 316; *Com. v. Murr,* 7 Pa. Superior Ct. 391; *Com. v. Hay,* 80 Pa. Superior Ct. 503. But there was also evidence that men, both civilians and soldiers, who were not tenants of the building, visited it in large numbers at all hours of the evening and night, and were shown to rooms on the upper floors occupied by young women tenants; and of occurrences within the house that bore no other reasonable inference than that the defendant knew that these young women were indulging in prostitution in their rooms and that he was receiving additional compensation from them for every man thus entertained by them. There was also testimony by a woman who admitted that she was a "hustler"—which seems to be underworld "cant" or "argot" for a "streetwalker"—that the defendant had solicited her to use his rooming house for assignation purposes, for which his charge would be only fifty cents a "trick". The defendant did not take the stand and deny any of this testimony. He lived in the building, which had three stories. Part of it was rented out for apartments and part as furnished rooms. It was of the use of these furnished rooms that complaint was made by Mr. Kleber, a tenant of one of the apartments,

who testified to overhearing an argument between the defendant and Mary Brown, a girl who occupied a furnished room in the building, in the course of which he demanded that she pay him fifty cents additional for every man received by her in her room. Kleber was substantially corroborated by the housekeeper who was present in the room when the colloquy took place.

The appellant's chief complaint is directed to the cross-examination of this girl who was called as a witness by the defendant and denied that he had made any such demand of her during the interview which she admitted had occurred.

In the course of her examination by *defendant's* counsel she stated that she had lived in the house— second floor rear—for about five and a half years, and was now working at a certain candy factory, at which she had been employed for about a month—"since I've been out".

The district attorney, in cross-examining her, elicited the fact that a short time before she had been convicted and sentenced to prison for six months for prostitution, and had just "come out" from serving that sentence in the Allegheny County Workhouse. She denied using her room for prostitution, but admitted she had answered the front door a couple of times in the evening and let in soldiers who had asked for 'Loretta'—a certain Loretta Brady being a roomer there.

The appellant contends that the crime of which the witness was convicted was neither a felony nor a misdemeanor in the nature of *crimen falsi,* and that evidence of it should not have been received to affect the credibility of the witness.

The term 'crimen falsi' was applied at common law to crime which *disqualified a person as a witness:* 22 C. J. S. Criminal Law, sec. 2. The only crime that now disqualifies a person in this State from testifying as a witness is perjury. The Penal Code, supra, sec

322.    When we use the expression, "a misdemeanor *in the nature of crimen falsi"*, we mean a crime less than felony, that by its very nature tends to cast doubt on the veracity of one who commits it.   Under the Criminal Code of 1860, P. L. 382, perjury was a misdemeanor and 'crimen falsi'.   Subornation of perjury, suppression of testimony by bribery, or conspiracy to procure the absence of a witness, barratry, the fraudulent making or alteration of a writing to the prejudice of another man's right, were offenses of a like nature: *Com. v. Schambers,* 110 Pa. Superior Ct. 61, 64, 167 A. 645, citing 1 Bouvier's Law Dictionary 730 (Rawle's 3d Revision) ; *Com. v. Jones,* 334 Pa. 321, 323, 5 A. 2d 804.

Under our practice, a witness, other than the defendant, can be questioned on cross-examination as to whether she has been *convicted*—as opposed to merely arrested or indicted—for a felony, or for a misdemeanor in the nature of crimen falsi—that is, such an offense as tends to affect injuriously her credibility. *Marshall v. Carr,* 271 Pa. 271, 278, 114 A. 500. We went into the question rather fully in *Com. v. Arcurio,* 92 Pa. Superior Ct. 404, 409-415, in which we held that the witness could not be asked on cross-examination whether she had been *'arrested'* or *'indicted',* and that a witness could not be cross-examined as to a previous *conviction,* unless it was for an offense of such a nature as to affect her credibility.   We think, in the circumstances of this case, the cross-examination was properly admitted to affect Mary Brown's credibility.   The tenant, Kleber, corroborated by the housekeeper, had testified to overhearing a conversation between the witness and the defendant that could not have taken place unless she was a prostitute and he was using his rooming house for prostitution and assignation.   She admitted that the interview with the defendant had taken place, but denied that he had demanded additional money of her

when she used her room for prostitution. Unless she was a prostitute, the conversation as related by Kleber was unbelievable. If she was, it was entirely credible. In our opinion, her admission that just shortly before she had been convicted and sentenced to the workhouse for prostitution, and had 'come out' from serving her sentence about a month before the trial, was of such a nature as to affect the credibility of her denial that such a conversation had taken place, and was proper cross-examination in the circumstances.

The cross-examination of the witness, Mrs. Golaszewski, was sustainable under *Com. v. Robzin,* 78 Pa. Superior Ct. 290, 292, where we held it was not improper to permit inquiry into the situation, associates and occupation of witnesses produced to swear to the good reputation of the accused. The same principle would apply to witnesses produced to swear to the good conduct and reputation of his house.

The assignments of error are overruled. The judgment is affirmed, and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part thereof that had not been performed at the time the appeal was made a supersedeas.