Commonwealth *v.* Greer, Appellant.

Argued March 9, 1964. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*John R. Gailey, Jr.,* with him *Victor Dell'Alba,* for appellant.

*Lewis H. Markowitz,* Assistant District Attorney, with him *Earl R. Doll,* Assistant District Attorney, and *Daniel W. Shoemaker,* District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, J., March 19, 1964:.

This is an appeal from the judgment of sentence of the Court of Quarter Sessions of York County by Gussie Greer, the defendant-appellant, after conviction of the violation of the Act of 1939, June 24, P. L. 872, §511, 18 PS §4511, for keeping and maintaining a disorderly house; and from the refusal by the court below of his motion in arrest of judgment. He was sentenced to pay a fine of $100.

The defendant was tried and convicted before the Hon. JAMES E. BUCKINGHAM, without a jury. The record discloses that he resided at 221 Oak Lane in the City of York where he leased the property, which consisted of four rooms, for a period of three to four months; that police officers kept the house under surveillance from 11:55 p.m. on July 28, 1962 until 4:00 a.m., on July 29, 1962; that they saw about twenty people come and go during that period of time; that there is nothing in the record of any complaints concerning the house prior to the raid or any testimony as to the purpose of the surveillance; that the police went in the front and back doors at 4:00 a.m. and found from ten to twenty people, including the defendant; that the police did not hear any noise until "we pulled up to the door"; that officer Goss testified that he couldn't hear anything while they were outside the house. They found five bottles of assorted whiskey, either empty or part full, two gallons of wine, ten empty and one hundred eighteen full cans of beer and three empty and twenty-seven full bottles of beer and three decks of cards; that the defendant told a police officer that he was running the place and that he intended to start a club; that he charged twenty-five cents for beer. The witnesses who purchased the beer did not know who sold it to them; that the people were sitting and talking in the kitchen and living room; there was talking but "I wouldn't say loud"; that there

was no dancing, card playing, immoral acts or drunkenness; that the talking was "just like any people sit and talk and drink, light talk"; that the defendant was searched and no money was found on his person or in the house.

With such a record the judgment must be arrested and the defendant discharged. The evidence does not establish the commission of the misdemeanor charged under the Act of 1939 (supra). He was not charged with violation of the Liquor Code.

Section 511 reads as follows: "Whoever keeps and maintains a common, ill-governed and disorderly house or place, to the encouragement of idleness, gaming, drinking, or misbehavior, and to the common nuisance and disturbance of the neighborhood or orderly citizens, is guilty of a misdemeanor, and on conviction, shall be sentenced to pay a fine not exceeding five hundred dollars ($500), or to undergo imprisonment not exceeding one (1) year, or both."

This Court has held that this section defines a misdemeanor long known at common law and did not create a new offense. *Com. v. Wesley*, 171 Pa. Superior Ct. 566, 91 A. 2d 298 (1952). In *Com. v. Ciccone*, 85 Pa. Superior Ct. 316 (1925), we said at page 318: "In a broad sense the term 'disorderly house' includes bawdyhouses, common gambling houses, and places of like character. It must, however, be recognized that the specific kinds of disorderly houses which are regarded in law as nuisances per se are bawdyhouses and gaming houses. The other kinds of disorderly houses are nuisances only as they are conducted in a manner to annoy the public; this class includes tippling houses and places of like character. The neighbors who complain of the disturbance caused by this latter class of nuisances, may be called as witnesses to state the specific facts upon which they ground their complaints, and which it is charged disturb the peace and quiet of

the neighborhood. Such houses, not being nuisances per se, it must be shown that they are conducted in a manner to annoy the public, and in such a case evidence as to the general reputation of the place is not admissible:"

There is no evidence in this record to support activity such as would constitute a nuisance per se at common law. The evidence of the Commonwealth established that there was no dancing, card playing, immoral acts or drunkenness.

It is true that there is evidence of the sale of beer without a license and it is also true that selling of liquor, brewed or malt beverages without a license has been declared to be a common nuisance. The Act of 1951, April 12, P. L. 90, Art. VI, §611, 47 PS 6-611, provides: "(a) Any room, house, building, boat, vehicle, structure or place, *except a private home,* where liquor, alcohol, or malt or brewed beverages are manufactured, possessed, sold, transported, offered for sale, bartered or furnished, or stored in bond . . . (is) hereby declared to be a common nuisance . . .". (Emphasis the writer's)

The Act specifically excluded private homes. The testimony indicates that both the defendant and the Commonwealth accepted the fact that the premises at 221 Oak Lane was the residence of the defendant although there was some evidence that his wife and children lived with her mother. There was no effort made in any way to establish that the premises in question was not his home, in fact, the Commonwealth established that it was his home. There was no evidence in this case of complaints by anyone concerning the premises. No complaints of loud noise, unruly people, the peace and quiet shattered by activity in the house "to the common nuisance and disturbance of the neighborhood or orderly citizens".

The testimony of the Commonwealth established that there were no unusual occurrences; they were just sitting and talking and drinking beer; no excessive noise; no card playing. *Com. v. Frangos,* 158 Pa. Superior Ct. 77, 78, 43 A. 2d 627 (1945), indicates the usual kind of testimony to support violation of this statute when a nuisance per se is not involved. "The evidence on the part of the Commonwealth showed that minor girls were permitted to frequent the business place of the defendant at late hours and were furnished beer by patrons who purchased it from the establishment; that customers told lewd jokes and openly solicited girls for the purpose of sexual intercourse; that a waitress employed by the defendant and a male customer acted in a lewd manner; that drunks frequented the place, that a tear gas bomb was discharged there, that some of the customers were arrested and plead guilty to disorderly conduct charges, based on their actions while in defendant's place of business; that the place was noisy and that the noise could be heard outside the restaurant and for considerable distance from it; that the actions of the customers were in full view of the defendant and were not restrained by him."

The sale of alcoholic beverages was not a nuisance per se at common law. A tippling house became a nuisance only when it annoyed the public and required such proof. *Com. v. Ciccone,* supra. The Commonwealth cites *Com. v. Hartung,* 156 Pa. Superior Ct. 176, 39 A. 2d 734 (1944), to support the verdict but a reading of this case clearly indicates that the kind of house with which we are concerned in this case becomes a nuisance and therefore disorderly only when there is evidence that it was conducted in a manner annoying to the public.

Judgment reversed and defendant discharged.

WRIGHT, J., would affirm on the opinion of Judge BUCKINGHAM for the court below.