## Clock Bar, Inc. Appeal (No. 2)

*Robert Woodside*, for appellant.

*Robert J. Wollett*, Special Assistant Attorney General for Commonwealth.

SHELLEY, J., April 20, 1966.—This matter is before us on the appeal of Clock Bar, Inc. (hereinafter referred to as licensee), from an adjudication and

order of the Pennsylvania Liquor Control Board (hereinafter referred to as the board) revoking a restaurant liquor license issued to licensee and forfeiting its bond entered for the license year beginning February 1, 1965, and ending January 31, 1966.

On July 26, 1964, the board issued a citation to licensee, wherein it was averred that appellant had violated the provisions of the Act of April 12, 1951, P. L. 90, 47 PS §1-101, et seq., known as the "Liquor Code", and the rules and regulations adopted thereto in the following manner:

"1. You, by your servants, agents or employes have been keeping and maintaining a disorderly house, on or about April 9, 10, 14, 28, June 16, 18, 20, July 1, 2 and 3, 1965, and on divers other occasions within the past year.

"2. You, by your servants, agents or employes permitted upon the licensed premises solicitation of patrons for immoral purposes, on or about April 9, 10, 14, 28, June 16, 18, 20, July 1, 2 and 3, 1965, and on divers other occasions within the past year."

At the hearing before an examiner of the board, enforcement agents of the board were called to testify that they had been solicited by patrons on the licensed premises to commit the acts of sodomy. On objection of licensee, the examiner excluded the testimony as hearsay. The agents were permitted, however, to testify that they had informed employes of the licensee of the solicitations.

There was also testimony before the examiner to the effect that there was a sign on the wall, which read: "Pickled eggs laid by gay roosters". There was also introduced in evidence a Xerox copy of a book by the name of "The Lavender Baedeker '66", which an agent testified he had purchased from an employe of licensee who was tending bar at the time. It was testified that the book contained the addresses of "gay bars" in the

United States, Mexico and Canada. There was testimony to the effect that the words "gay bars" indicated such places were patronized by homosexuals.

Thereafter, the board issued the following

"OPINION

"On July 26, 1965, the Board issued a citation to the captioned licensee to show cause why the above license should not be revoked and the bond forfeited. The said citation and notice of hearing were sent by certified mail to the licensee at its licensed premises, as required by the Liquor Code.

"At the hearing on the citation, the evidence adduced establishes the following facts:

"1. The licensee, by its servants, agents or employes had been keeping and maintaining a disorderly house on April 9, 10, 14, 28, June 16, 18, 20, July 1, 2, 3, 1965.

"2. The licensee, by its servants, agents or employes permitted upon the licensed premises solicitation of patrons for immoral purposes on April 9, 10, 14, 28, June 16, 18, 20, July 1, 2, 3, 1965.

"The Board has also considered the record of prior citations issued against the licensee and the penalties imposed thereon as presented in evidence at the aforesaid hearing.[1]

---

[1] The following are the citations referred to in the opinion:

(1) Citation no. 971, 1962, wherein the board found that:

"1. The licensee, by its servants, agents or employes permitted a minor to frequent the licensed premises on April 27, 1962.

"2. The licensee, by its servants, agents or employes sold, furnished and/or gave or permitted such sale, furnishing and/or giving of alcoholic beverages to a minor on April 27, 1962".

The evidence taken by the board indicates that licensee sold liquor on several occasions to one Lonnie Marlin Snyder, who exhibited a Selective Service registration card indicating his age to be 26. He was on probation at the time for stealing automobiles.

(2) Citation no. 1371, 1962, wherein the board found that:

"1. The licensed establishment operated by the licensee was not a bona fide restaurant in that it was not habitually and principally

"THEREFORE, the Board finds that the licensee violated the laws of the Commonwealth and the regulations of the Board relating to liquor, alcohol and malt or brewed beverages, and that a severe penalty is warranted. Accordingly, it makes the following order:

"ORDER

"AND NOW, October 20, 1965, for the foregoing reasons, it is ordered and decreed that the Restaurant Liquor License No. R-12649, issued to CLOCK BAR,

used for the purpose of providing food for the public and there were insufficient dishes, silverware and cooking utensils, on the licensed premises.

"2. The premises operated by the licensee was maintained in an insanitary condition on August 31; and September 14, 1962.

"3. The licensed establishment operated by the licensee was not a bona fide restaurant in that there were insufficient chairs and tables to accommodate at least 30 persons at one time on the licensed premises".

Citations nos. 971, 1962 and 1371, 1962, were contained in the same proceedings. The penalty invoked was for a suspension of 40 days.

(3) Citation no. 1683, 1963, wherein licensee was cited as follows:

"The checks or drafts issued by the licensee and dated February 15; March 29; May 17; June 5; July 5; August 15 and 17, 1963, in payment for purchases of malt or brewed beverages were dishonored by the institution upon which drawn".

The penalty invoked was for a suspension of 15 days.

(4) Citation no. 1336, 1964, wherein it was charged that:

"1. The licensee, by its servants, agents or employes operated a lottery on the licensed premises on April 17, 1964.

"2. The licensee, by its servants, agents or employes offered and/or gave liquor in a lottery on April 17, 1964.

"3. The licensee, by its servants, agents or employes failed to regularly clean at least once every seven (7) days all coils, tap rods and connections used in the operation of drawing malt or brewed beverages in the licensed establishment, and keep a record thereof".

The penalty invoked by the board was for a suspension of 50 days. This citation is in our court on appeal, and an opinion by Lipsitt, J., dismissing the appeal is being filed herewith. See 39 D. & C. 2d 625.

INCORPORATED, for premises No. 400 North Second Street, in the City of Harrisburg, County of Dauphin, be and it is hereby revoked. This order shall become and be effective November 15, 1965.

"IT IS FURTHER ORDERED AND DECREED that the bond filed with the application for the license year beginning February 1, 1965 and ending January 31, 1966, be and it is hereby forfeited. This order shall become and be effective November 15, 1965".

It is from this opinion and order that licensee appealed to this court,[2] averring that the evidence presented to the board was insufficient to warrant a revocation of its license and that the order was arbitrary and punitive in nature.

The hearing on appeal is de novo on questions of fact,[3] so that the burden of proving the allegations contained in the citation is on the board. Licensee does not have the burden of disproving the findings of the board: Legion Home Association of Monessen Appeal, 195 Pa. Superior Ct. 643 (1961).

The first count in the citation charges licensee with keeping and maintaining a disorderly house. What amounts to "disorderly houses" was discussed at length in Commonwealth v. Ciccone, 85 Pa. Superior Ct. 316 (1925), where the court said on page 318:

"In a broad sense the term 'disorderly house' includes bawdyhouses, common gambling houses, and places of like character. It must, however, be recognized that the specific kinds of disorderly houses which are regarded in law as nuisances per se are bawdyhouses and gaming houses. The other kinds of disorderly houses are nuisances only as they are conducted in a manner to annoy the public; this class includes tippling houses and places of like character. The neighbors who

---

[2] Act of April 12, 1951, 90, sec. 471, as amended, 47 PS §4-471.

[3] Act of April 12, 1951, P. L. 90, sec. 471, as amended, 47 PS §4-471, and sec. 464, 47 PS §4-464.

complain of the disturbance caused by this latter class of nuisances, may be called as witnesses to state the specific facts upon which they ground their complaints, and which it is charged disturb the peace and quiet of the neighborhood. Such houses, not being nuisances per se, it must be shown that they are conducted in a manner to annoy the public, and in such a case evidence as to the general reputation of the place is not admissible".

At the hearing on appeal, counsel for the board asked one of the enforcement officers the following question:

"Did you have or were you solicited by any persons on this premises for any immoral purposes?"

Counsel for licensee interposed the following objection:

"We object to that unless the bartender or one of the owners was present at the time he was solicited, and heard the solicitation. Otherwise it would be hearsay of the worst type".

Counsel for the board, in support of its position, cited Commonwealth v. Dolan, 155 Pa. Superior Ct. 453 (1944). The Dolan case is distinguishable from the instant case. In that case, defendant was charged with a violation of the Act of June 24, 1939, P. L. 872, sec. 512, 18 PS §4512, which act makes it a misdemeanor to use a building for the purpose of prostitution or assignation, and provides specifically therein that:

"In the trial of any person charged with the violation of any of the provisions of this section, testimony concerning the reputation of any place, structure, or building, and of the person or persons who reside in or frequent the same, and of the defendant, shall be admissible in evidence in support of the charge".

Evidence as to the general reputation of a disorderly house, upon the trial of an indictment charging the maintenance of such a nuisance, is not admissible. The rule is different, however, when the indictment charges

the keeping of a bawdyhouse (Commonwealth v. Soo Hoo Doo, 41 Pa. Superior Ct. 249 (1909) ) ; and the reasons for that difference are stated in Commonwealth of Pennsylvania v. Tillie Murr, 7 Pa. Superior Ct. 391 (1898).

Where a house is not a nuisance per se, such as a bawdyhouse or gambling house, it is a nuisance only if it is conducted in a manner to annoy the public: Commonwealth v. Greer, 203 Pa. Superior Ct. 110 (1964). As to licensee's place of business, not being a nuisance per se, it would be necessary to show that it was conducted in a manner to annoy the public or orderly citizens, and witnesses in that respect could testify as to specific facts which they contend disturbed the peace and quiet of the neighborhood: Commonwealth v. Frangos, 158 Pa. Superior Ct. 77, 79 (1945).

No evidence was presented, either before the board or at the hearing on appeal, to support a finding that licensee kept and maintained a disorderly house, or that the premises were used as a bawdyhouse, a gaming house, or that conduct therein disturbed the peace and quiet of the neighborhood. As a matter of fact, the record discloses that such solicitations were not made in a manner to catch the attention of any person other than the individual making the solicitation and the agent to whom the solicitation was directed. At the hearing before the examiner,[4] five witnesses, all of whom lived within approximately 200 feet of the premises, some of whom appeared under subpoena, testified that they had never observed any unseemly, improper, illegal or disorderly conduct of any type whatsoever.

Accordingly, we conclude that licensee had not been keeping and maintaining a disorderly house on the dates alleged in the citation, or, in fact, at any other time.

---

[4] On motion of licensee, and without objection, the testimony taken before the board was made a part of the record in this appeal.

Because of this conclusion, testimony as to what conversations took place between the agents and the solicitors outside the hearing of the employes of licensee becomes inconsequential, and we, therefore, need not rule on its admissibility.

We now come to a consideration of the second count in the citation, which charges that "the licensee, by its servants, agents or employees, permitted upon the licensed premises solicitation of patrons for immoral purposes". It is the contention of the board that licensee permitted homosexuals to solicit patrons on the licensed premises. The mere fact that homosexuals go unto licensed premises does not, ipso facto, convict licensee of permitting upon the licensed premises solicitation of patrons for immoral purposes. There is no law which forbids homosexuals from being patrons of licensed premises. Such persons only become objectionable when they make a nuisance of themselves by promiscuous solicitations.

There was no evidence of any solicitations of patrons except those encouraged by the agents, and they were on the premises for the very purpose of obtaining evidence of solicitation to commit sodomy. Their evidence in this respect must be weighed against the evidence of the five persons called by licensee and referred to above, each of whom testified that, on occasions, they patronized the premises and "always found it to be run in an orderly manner".

Each of the four agents testified that, on visits to the licensed premises, they advised employes of licensee of the fact that they had been solicited on the licensed premises by homosexuals and made known to the employes the identification of the persons who had solicited them. Knowledge of the employe imputes knowledge to licensee: Easton's Liquor License Case, 142 Pa. Superior Ct. 49 (1940). Consideration must also be given to the testimony of the sale of the book,

"The Lavender Baedeker '66", and to the sign on the wall, both of which have been referred to above.

Accordingly, we make the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. The Pennsylvania Liquor Control Board issued restaurant liquor license number R-12649 to the Clock Bar, Inc., 400 North Second Street, Harrisburg, Pa., for the license year beginning February 1, 1965, and ending January 31, 1966.

2. The Pennsylvania Liquor Control Board cited licensee for keeping and maintaining a disorderly house and permitting upon the licensed premises solicitation of patrons for immoral purposes.

3. Licensee did not keep and maintain a disorderly house on the dates referred to in the citation.

4. Licensee did permit upon the licensed premises solicitation of patrons for immoral purposes on the dates referred to in the citation.

## CONCLUSIONS OF LAW

1. The matter is properly before us.

2. The testimony offered before the board at the hearing on appeal does not support the allegations of count 1 of the citation, which charges that licensee was conducting a disorderly house and, in that respect, the board abused its discretion.

3. The testimony offered before the board and at the hearing on appeal sustains count 2 of the citation, which charges that solicitations to commit sodomy by homosexuals were permitted and condoned by licensee.

In liquor license cases, where the findings of the court are different from those of the board, and we have so found, the court may modify the penalty imposed by the board: Legion Home Association of Monessen Appeal, 195 Pa. Superior Ct. 643 (1961); Lehigh Valley Brewery Workers Home Association

676

Liquor License Case, 154 Pa. Superior Ct. 141 (1943). We, therefore, make the following

ORDER

And now, April 20, 1966, it is ordered and decreed that the appeal of Clock Bar, Inc., from the revocation of restaurant liquor license number R-12649, issued to Clock Bar, Inc., for the premises 400 North Second Street, in the City of Harrisburg and County of Dauphin, be sustained as to count 1 of the citation and denied as to count 2 of the citation, and further, the license referred to above is suspended for a period of 50 days, to commence and be computed from the termination of the suspension ordered in proceedings entered in the Court of Quarter Sessions of Dauphin County to number 396, miscellaneous docket, 1965. Licensee is directed to pay the costs.